FRANCES J. WATERBURY v. SAMUEL F. ANDREWS, TRUMAN KELLOGG, AND CHESTER R. WATERBURY.

67  281
f119  470

*Married woman—Note and mortgage to secure husband's debt—Equity—Bona fide holder—Rescission.*

1. The note of a married woman given to secure her husband's debt is *void* as soon as made, and will not be protected in the hands of a *bona fide* holder, whether negotiable or not.

2. A court of equity will interfere, when its aid is properly invoked, to set aside a mortgage given by a married woman on her separate estate to secure the debt of her husband, when such execution was secured through the fraud and artifice of the mortgagee, and the promises and representations conveyed to her by her husband, which were false and fraudulent.

3. No rescission of a *void* contract by which the complaining party receives nothing is necessary before invoking the aid of equity to set it aside.

1. A surety, induced to become such by fraud perpetrated upon him by the creditors of the principal debtor, as by false representations as to material facts, may make the defense for the principal in a suit to enforce the claim against the surety.

Appeal from Ionia.   (Mills, J., presiding.)   Argued June 23, 1887.   Decided October 20, 1887.

Bill filed to set aside a note and mortgage executed by a married woman to secure her husband's debt.   Defendants Andrews and Kellogg appeal.   Decree granting relief prayed for affirmed.   The facts are stated in the opinion.

*F. D. M. Davis* (*Mitchel & McGarry*, of counsel), for complainant.

*Webster & Millard*, for appellants.

SHERWOOD, J.   The complainant files her bill in this cause for the purpose of procuring a decree canceling a certain note made by her to the defendant Andrews, and also to set aside a mortgage made and executed at the same time by her as collateral security for the payment of the note.

The grounds upon which she claims her right to relief are fraud, misrepresentation, and no consideration; also that she made said note to secure her husband's debt, and executed the mortgage while she was a married woman, for the purpose mentioned, and not for her own benefit.

The complainant avers that she resides in the city of Ionia, where she was, on the twenty-third day of June, 1883, and still is, the owner of a house and lot, wherein she now lives, and has lived with her children and husband for the last four years, and that the same is her homestead.

Complainant further says that her husband, who is the defendant Waterbury, is a carpenter and joiner, and several years prior to the last-named date he worked at his trade; that during the spring and summer of 1883 defendant Andrews lived in Ionia, and was following the business of

laying concrete pavement, and on or about the first day of June solicited a business arrangement with her husband, claiming and pretending that the process used in the construction of such pavement had been duly patented to Staples & Dudley, of New Hampshire, and that he (Andrews) owned a large amount of territory under the patent, and thereunder had and owned the exclusive right to make, use, and sell such process or composition, and the recipe or formula of making the same, in the county of Ionia; that the use, manu-facture, and sale of the same produced large profits, and that he was building the sidewalks in the city of Ionia according to the specifications and patent; and that he, said Andrews, thus became the owner of the territory of the county of Ionia by purchase.

Complainant further says that the said Andrews sold his rights as above represented under said patent to her husband, for the sum of $1,000, and that her husband, relying upon Andrews' representations to be true, agreed to buy the same of Andrews, and give him $1 000 therefor, and paid him $50; that Andrews required security for the remainder; and her husband representing to her the same facts that Andrews did to him, and she believing them to be true, and relying upon the same, she was induced to and did make and execute the note and mortgage in question, to secure the debt of her husband, then made and contracted.

The complainant further avers that both said note and mortgage were thus given by her without any consideration, and she has never received any; that they were only given at the request of her husband, to secure his performance of the contract and agreement for the purchase of the said patent-right, which was made by him upon the representations of said Andrews.

She further avers that her husband represented to her, when she executed the mortgage and note, that she would never be required to pay the same under the representations

of Andrews, and she verily believed that said Andrews made such representations, and that they were true. And she avers that she was misled, cheated and defrauded by the statements of the said Andrews, so communicated to her, and believed and relied upon by her; that such statements of the said Andrews, and pretenses and representations, were unfounded and untrue.

Complainant further says and avers (after giving a copy of the conveyance by Andrews to her husband) that the said recipe and formula has never been patented by any person, neither is it a new invention, and that said Andrews never gave her husband any recipe or formula which was claimed by said Staples to be patented; and that the representations made by said Andrews were false and fraudulent, and well known to him to be so, and made for the purpose of cheating and defrauding her out of her just rights.

Complainant further charges that defendant Kellogg claims to be an assignee of said note and mortgage as collateral security for some other claim; and that said assignment was made to said Kellogg by Andrews for the purpose of aiding the latter to wrong, injure, and defraud her in the premises.

She further avers that her husband has heretofore paid the interest on said note and mortgage as it became due, but for that now due said Andrews and Kellogg threaten to enforce payment; that Andrews still has the mortgage and note in his possession, and owns the same; that her husband was duped and beguiled into the contract he made with Andrews, and, if not, he is in collusion with Andrews; but she is informed that he has discovered the worthlessness of the article he purchased of Andrews, and has requested him to return the note and mortgage; but she believes and avers that Andrews and Kellogg will not give up the note and mortgage, but make combination with others to further cheat and defraud her.

Such is the substance of the bill, and the complainant insists she is entitled to a decree for cancellation of the note and mortgage, and she prays for an injunction against further disposition of the note.

The defendants made separate answers.

Andrews in his admits the residence of the parties, and the complainant's ownership of the property as charged, and the sale to Mr. Waterbury of the patent for making the pavement upon the terms stated by complainant, and that defendant Waterbury has paid the interest on the note and mortgage as complainant has averred, and the assignment of said note and mortgage to Kellogg.

He admits that the mortgage is upon her separate property, and given for her husband's debt; avers that complainant (so far as he is concerned) is "an utter stranger in the sale by him to the said Chester R. Waterbury;" and denies every other material allegation in the complainant's bill, and prays the benefit of a demurrer.

Defendant Kellogg in his answer admits the residence and relationship of complainant to defendant Waterbury; admits she gave the note and mortgage, and was the owner of the property mortgaged, but leaves her to her proof to show that at the time she gave the mortgage she occupied it as the homestead for herself, her husband, and her children; and further says he knows nothing of the sale of the patent to Andrews, and the representations made by Andrews at the time, except as he is informed by the bill.

He admits that Andrews assigned the note and mortgage to him as collateral security, as stated in the bill, and denies the assignment was made by Andrews, or taken by him, "to wrong, injure, or defraud her out of her rights;" admits that the interest was paid as claimed by complainant, and says that interest is now due for another year, and that he is very desirous that the same should be paid; that in all his dealings concerning said note and mortgage he has acted in

good faith; that he holds said note and mortgage as collateral security to an indebtedness incurred by Andrews in the purchase of a house and lot of him, Kellogg, in Grand Rapids, to the amount of $400.

The defendant, Waterbury in his answer admits every material charge in the complainant's bill to be true; and further says and—

"Prays that he may have the same relief in and by this answer against the said defendant Samuel F. Andrews, as though he had filed a cross-bill herein, under the rules and practice of this court, and that the contract and agreement between this defendant and the said Andrews may be declared null and void; this defendant being ready and willing, and hereby offering, to do and perform all that which upon his part, if anything, should be done and performed in the annulment, repudiation, and cancellation of said agreement, to secure the performance of which said note and mortgage of said complainant was executed and delivered as aforesaid."

The proofs were taken before Judge Mills, of the Kalamazoo circuit, and the cause was heard before him on the pleadings and proofs, who, after due consideration, rendered a decree ordering the note and mortgage to be delivered up by defendants Andrews and Kellogg to be canceled, within 60 days, and in default thereof that a certified copy of the decree be recorded, which should have the effect of cancellation of the securities.

Defendants Andrews and Kellogg appeal.

The parties were all sworn in the case, and, after a careful perusal of the record, and a review of the briefs of counsel, I have no doubt of the correctness of the decree made by the circuit judge.

It is very clear that the complainant is not liable upon her note. Reeve, Dom. Rel. 182; Tyler, Inf. §§ 315–317; *De Vries v. Conklin,* 22 Mich. 255; *Emery v. Lord,* 26 Id. 431; *West v. Laraway,* 28 Id. 464; *Ross v. Walker,* 31 Id. 120; *Carley v. Fox,* 38 Id. 387; *Russell v. People's Saving Bank,* 39 Id. 671; *Johnson v. Sutherland,* Id. 579; *McCombs v.*

*Merryhew*, 40 Id. 721; *Gantz v. Toles*, Id. 725; *Kenton Insurance Co. v. McClellan*, 43 Id. 564; *Reed v. Buys*, 44 Id. 80; *Buhler v. Jennings*, 49 Id. 538; *Edwards v. McEnhill*, 51 Id. 160.

The note was void as soon as made, and in the hands of a *bona fide* holder cannot be protected, whether negotiable or not. *Kenton Insurance Co. v. McClellan*, 43 Mich. 564; *Johnson v. Sutherland*, 39 Id. 579.

It is difficult to read the record in this case without reaching the conclusion that it was the successful employment of artifice, deception, cunning, and fraud by Andrews, which circumvented the complainant, and finally ended in his securing from her, by the aid of her duped and beguiled husband, the mortgage in question; and a court of equity can never fail to interfere in such cases when its aid is properly invoked, and prevent the wrong-doer from reaping the benefits of his frauds.

The complainant never received any consideration for, or benefit from, either note or mortgage, and the testimony shows she could not have been induced to make the mortgage, except upon the promises and representations conveyed to her by her husband, and which were false and fraudulent.

The rights of a married woman to the property in her homestead are very poorly secured, and of small moment to her, if the wary, designing, and unscrupulous may use the weak and unsuspecting husband, as was done in this case, to defraud her out of those rights.

No rescission was necessary in this case. The complainant received nothing to return. The contract was void for fraud as to her, and voidable as to her husband; and he is before us asking to have it declared void, averring that he received, or rather admitting he received, nothing from the defendant Andrews. See Benj. Sales, § 899; *Day v. Pool*, 52 N. Y. 420; *Perley v. Balch*, 23 Pick. 283; *Bliss v. Negus*, 8 Mass.

46 ; *Dayton v. Monroe,* 47 Mich. 193 ; *Hanscom v. Hinman,*
30 Id. 419 ; *Match v. Hunt,* 38 Id. 1 ; *Dunn v. Amos,* 14 Wis.
115 ; *Harding v. Handy,* 11 Wheat. 103.

The defendants appealing claim complainant cannot liti-
gate the question of fraud, if any, in the contract between
the defendant and her husband; and, further, if there was
fraud, the husband is the only person injured.   It is true
that the person injured by fraud only can complain of it.
*Crane v. Reeder,* 25 Mich. 313.   This is the general rule.
But it is equally true that if a surety is induced to become
such by a fraud perpetrated on him by the creditors, as by
false representations as to material facts, the surety may
make the defense.   Brandt. Sur. § 201 ; *Evans v. Keeland,* 9
Ala. 42.

The difficulty in this case is that the fraud was perpetrated
by Andrews upon complainant through her husband, and she
is really the person who is to be most injured ; and it is all the
more gross by reason of the means used to accomplish it.

The note in this case was void.   There is no other promise
by the complainant to pay anything.   Had there been no
fraud in the case, there may be some question whether the
complainant would not be entitled to the relief she asks; but
I do not wish to discuss that question, as it is not necessarily
involved in the case, or raised by counsel.

Under the testimony, I do not think Kellogg can be
regarded as a *bona fide* holder, and stands in no better situa-
tion than does Andrews.

I have no question but that the equities of the case, as
between the complainant and both the defendants who have
appealed, are with her, and the decree of Judge Mills must
be affirmed, with costs of both courts.

The other Justices concurred.