## Wm. J. Lemp Brewing Co. v. Secor.

No. 2033, Okla. T.    Opinion Filed June 24, 1908.

(96 Pac. 636.)

1.  **PRINCIPAL AND SURETY—Assent by Surety.** Where the principal and the agent of the obligee, in an obligation or bond, represent to certain persons, to induce them to sign the same as sureties, that certain other parties had agreed to sign the same, also as sureties, and, further, that none of said sureties signing the same were to be bound on said bond, nor was the same to be delivered to said obligee until said designated parties had signed the same, said obligation or bond is neither a completed contract, nor binding upon said sureties, until so executed, and, though said obligee notified, by letter, said sureties that he had received and approved same, designating the names of the obligors thereon, said obligation or bond being to secure a pre-existing debt, said sureties not having replied to said letter from said obligee, such circumstances, as a matter of law, would not necessarily constitute an assent.

2.  **SAME.** Where the agent of the obligee, in a bond or obligation, agrees that such bond or obligation shall not become binding until certain designated persons have signed the same, and that said bond or obligation shall not be delivered to the party represented by said agent unless it was so signed, and thereafter, in violation of such agreement and representations, the same is delivered to the party represented by said agent, and such party, disregarding such representations and agreement, approves the same, and notifies said sureties thereon, thereby

varying the original agreement, said sureties will not become liable on said bond or obligation until they assent thereto.

3.    CONTRACTS — "Assent" — What Constitutes —"Meeting of the Minds." An "assent" is evidenced by a proposition emanating from one side, and an acceptance of it on the other, such proposition and acceptance together constituting what is called a "meeting of the minds"; and, where the proof fails to show that there was a "meeting of the minds" in the making of a contract, such contract does not become effective.

(Syllabus by the Court.)

*Error from District Court, Comanche County; before F. E. Gillette, Judge.*

Action by the Wm. J. Lemp Brewing Company against C. A. Secor and others. Judgment for defendants, and plaintiff brings error. Affirmed.

On the 25th day of May, A. D. 1904, plaintiff in error, as plaintiff, commenced this action against the defendants in error, C. A. Secor, Hub Crawford, R. B. Stevens, J. E. Dyche, Elliott F. Hook, as trustee in bankruptcy for M. S. Simpson, bankrupt, J. W. Bozeman, J. A. Pratt, S. L. Cheek, G. D. Ledgerwood, C. E. Bear, Charles Yahn, W. M. Bruce, George S. Bailey, R. R. Pritchard, and J. P. Boetner, as defendants, in the district court of Comanche county, territory of Oklahoma, alleging that on the 4th day of November, 1903, said defendants made, executed, and delivered to said plaintiff their certain obligation and contract in writing, in words and figures as follows:

"Know all men by these presents, that I, C. A. Secor, of Lawton, Comanche county, Oklahoma Territory, as principal, and Hub Crawford, R. B. Stevens, J. E. Dyche, M. S. Simpson, J. W. Bozeman, J. A. Pratt, S. L. Cheek, G. D. Ledgerwood, C. E. Bear, Chas. Yahn, S. M. Bruce, G. S. Bailey, of Snyder, R. R. Pritchard, of Snyder, J. P. Boetner, Lawton, as sureties, are held and firmly bound to Wm. J. Lemp Brewing Co., of St. Louis, Mo., in the sum of five thousand dollars ($5,000) lawful money of the United States, to be paid to the said Wm. J. Lemp Brewing Company, its successors or assigns, for which payment well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally by these presents.

Sealed with our seals and dated this the 4th day of November, 1903. The conditions and consideration of the above obligation is such that, whereas, the said C. A. Secor is now justly indebted to the said Wm. J. Lemp Brewing Company in the sum of five thousand dollars ($5,000) after allowing all demands, counter-claims, and offsets, and whereas, the said C. A. Secor is desirous of an extension of the time of payment of the said indebtedness in installments as follows: Jan. 1, 1904, $200; Feb. 1, 1904, $200; March 1, 1904, $200; April 1, 1904, $300; May 1, 1904, $400; June 1, 1904, $400; July 1, 1904, $600; Aug. 1, 1904, $600; Sept. 1, 1904, $600; Oct. 1, 1904, $500; November 1, 1904, $500; Dec. 1, 1904, $500; to be payable at the office of said Wm. J. Lemp Brewing Co., St. Louis, Mo. Now, it is therefore for value received and in consideration of such an extension of time being granted by the said Wm. J. Lemp Brewing Company to the said C. A. Secor for the payment of the several sums of money at the different times heretofore mentioned, we and each of us do hereby undertake and obligate ourselves to make and secure the payment and performance of this obligation in accordance with the terms and conditions thereof as stated. Now, if the said C. A. Secor shall well and truly pay or cause to be paid to the said Wm. J. Lemp Brewing Company the said several sums of money when due as aforesaid, then this obligation is to be null and void, otherwise to remain in full force and effect, but if default is made in the payment of any of said installments at the maturity thereof the said Wm. J. Lemp Brewing Company shall have the right to declare all the other remaining installments due and payable at once by an indorsement in writing on this obligation of words to that effect; and demand of payment upon said C. A. Secor shall be sufficient notice to the sureties of the present-ment or nonpayment of any or all of said installments. If payment is not made of said installments or any part of same when due and same is placed in the hands of an attorney for collection or suit is instituted thereon, we agree to pay ten per cent. additional as attorney's fees."

Plaintiff further alleged that the defendants, and each of them, obligated and bound themselves, the said C. A. Secor as principal, and the other defendants as sureties, to pay the said plaintiff the sum of $5,000, on the several days and dates, the several amounts mentioned, as stated in said obligation, and, in

addition thereto, 10 per cent. attorney's fees should default be made in the payment of any of said amounts when due, if same should be placed in the hands of an attorney for collection, or suit instituted thereon. Plaintiff further alleged that, by the terms of said obligation, upon default being made in the payment of any of said installments at maturity thereof, it had a right to declare all the other installments due and payable at once, by indorsing in writing, on the obligation, words to that effect. Plaintiff further alleged that, after the execution and delivery of said obligation, the said defendant C. A. Secor paid to the plaintiff the several amounts on the several dates as thereon indorsed, to wit, November 13, 1903, $104.47; December 30, 1903, $95.53; March 7, 1904, $200; March 9, 1904, $185.81; and April 25, 1904, $149.18. Further, that said defendants, though often requested since due, have not paid the balance due of $165.01 that became due on April 1, 1904, nor said installment of $400, due on May 1, 1904, and that, in keeping with and in accordance with the terms of said obligation, and by reason of the nonpayment of said sums, the plaintiff made the following indorsement in writing on said obligation, to wit: "By reason of the nonpayment, according to the terms of this contract and obligation, of the balance due on said installment of $300, falling due on May 1, 1904, the Wm. J. Lemp Brewing Co., of St. Louis, Mo., mentioned herein, do hereby declare each and all of the remaining said installments due and payable at once. This May 19, 1904, [Signed] Wm. J. Lemp Brewing Co., by A. Wahlstab, Agent"—when and whereby all of the said amounts, in said obligation and contract, not so paid became due and owing to the plaintiff, to wit, the sum of $4,265.01, together with interest thereon at the rate of 7 per cent. per annum, from May 18, 1904, until paid, and due notice thereof has been given to the defendants of the demand and nonpayment of said obligation, and demand had been made for the payment of the balance, the said sum of $4,265.01; and upon their failure to pay same, or any part thereof, said obligation and claim had been placed in the

hands of an attorney for collection and for the institution of suit thereon, and by reason thereof the defendants were justly indebted to the plaintiff in the sum of $4,265.01, with interest thereon at the rate of 7 per cent. per annum, from May 19, 1904, and an additional 10 per cent. thereon as attorney's fees, for which plaintiff now asks judgment against the defendants.

The defendants each answered substantially as follows: Admitting the execution of said instrument, but stating that he signed the same with the distinct and special understanding and agreement with the plaintiff's agent, A. Wahlstab, and the principal, C. A. Secor, that there were to be upon said obligation the names of at least 25 good and solvent sureties, residents of Oklahoma Territory, who should be co-sureties with said surety before said obligation should be delivered or binding upon said defendants, and among said sureties, it was agreed with plaintiff's agent and the said principal, was to be one Harris and also one Ed Block, the said Harris and said Block being men of considerable means, but that, in violation of said agreement, the plaintiff, through its duly authorized agent, A. Wahlstab, conspired with the said Secor to injure said surety and to try to hold him liable against his consent, and wrongfully and fraudulently induced said Secor to deliver over to plaintiff's agent the said obligation without having obtained the signatures of the said 25 solvent sureties, including the said Block and Harris, there being only 14 sureties on said instrument when so wrongfully and fraudulently delivered to plaintiff's agent by said Secor; the plaintiff participating in said wrong and fraud.

The obligation was introduced in evidence, and proof of demand made for the payment of the debt, and further proof of the indorsement made by plaintiff declaring all the indebtedness due. Thereupon the defendants introduced evidence tending to prove that one A. Wahlstab, the duly authorized agent of plaintiff, represented and agreed with each of said sureties, in the presence of said Secor, the principal in said obligation, as an inducement to secure their signatures to said obligation, that, unless 25 good

and solvent sureties, including the said Harris and said Block, should be obtained upon said instrument, the same should not be considered as a completed contract, neither have any binding effect upon any of said sureties, nor was the same to be delivered by Secor to plaintiff.

On November 10, 1903, plaintiff, from its home office in St. Louis, Mo., addressed a letter to each of said defendants, the body of which is as follows:

"Messrs. Sims & Wolverton: Our Lawton, O. T., attorneys have just transmitted to us the new obligation of Mr. C. A. Secor, for the sum of $5,000 owing us, dated the 4th day of November, 1903, wherein W. M. Bruce, Hub Crawford, R. B. Stevens, J. E. Dyche, M. S. Simpson, J. W. Bozeman, J. A. Pratt, S. L. Cheek, G. D. Ledgerwood, J. P. Boetner, C. E. Bear, Chas. Yahn, of Lawton, G. S. Bailey and R. R. Pritchard, of Snyder, O. T., are sureties. The document was mailed to us by Messrs. S. & W. for examination and approval. We have looked over the obligation, and approve of the same, of which please take notice. Yours truly [Signed] Wm. J. Lemp Brewing Co., by Henry Vahlkemp, Sec'y."

It developed in the testimony that J. E. Dyche, M. S. Simpson, and another were on a prior obligation of said Secor to the plaintiff, but it nowhere appears that said obligation was canceled and surrendered over to said Dyche and his co-obligors thereon; but, so far as appears from this record, same was still retained by plaintiff. The plaintiff's agent denied that he had made the agreement with each of the sureties, as contended on behalf of the defendants. It does not appear from the testimony that any of the defendants ever answered or replied to the letter or notice sent to each of them by the plaintiff on the 10th day of November, 1903. The issues were submitted to a jury under proper instructions. The plaintiff contends that, as a matter of law, the court should have directed a verdict in its behalf.

This cause is now properly before this court, being transferred from the Supreme Court of the territory of Oklahoma, by

virtue of the provisions of Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 267) for review.

. *J. H. Wolverton,* .for plaintiff in error.

*Stevens & Myers, Al J. Jennings, Black & Trosper, Ray & Fain,* and *Hudson & Key,* for defendants in error.

WILLIAMS, C. J. (after stating the facts as above). The sole question presented in this record is whether or not the facts show an assent to the variation of the agreement between plaintiff's agent and said sureties. The jury, having found the issues in favor of all the defendants, necessarily found that the agreement and representations between plaintiff's agent and the principal obligor, Secor, and said defendants, were as contended by said defendants.

In the case of *Holliday et al. v. Poole et al.,* 77 Ga. 160, one of the defendants filed a plea to the petition or declaration, as follows:

"He is surety only in said case, and was deceived by the said plaintiff, in signing said note, by stating that T. A. Poole, defendant, said for him to sign for him, and he would sign his, and the same is not true, and of this he puts himself upon the country."

Chief Justice Jackson, in speaking for the court, said:

"If the surety on the note was induced to sign it, and did sign it, by false representations of the payee that his brother had requested him to sign as surety, and then he would sign notes of his also as surety, this does. not make a case of fraud and misrepresentation without damage to the surety, but it is a case of fraud with damage, and serious damage. The damage is that it makes him obligate himself to pay this note; that it induces him to sign a paper on which he can be sued, and is here actually sued; that it puts him where he has to incur costs of suit, and his own lawyers' fees, to defend the suit, and on these notes to incur the obligation to pay also the fees of the payee's lawyers, and if there had been a recovery by the payee in the case, it would have been not only the principal and interest, but the fees, 10 per cent. of the debt, for the payee's counsel."

The unbroken line of authority is that if each one of these sureties signed this obligation with the understanding with plaintiff's agent that it was neither to be a completed obligation until certain other designated solvent sureties signed it, nor was it to be delivered until so signed, and that, without securing the signatures of such sureties, such obligation was transmitted to plaintiff, such obligation is void. *Evans et al. v. Keeland*, 9 Ala. 43; *Bank of Monroe v. Anderson Bros. Min. & Ry. Co.*, 65 Iowa, 692, 22 N. W. 929; *Waterbury v. Andrews*, 67 Mich. 281, 34 N. W. 575; 14 Am. & Eng. Ency. Law (2d Ed.) p. 1166, and authorities cited in note 10; Id., p. 1167, and authorities cited in notes 1 and 3; 20 Cyc. p. 1419, and authorities cited in note 29; *White Sewing Mach. Co. v. Saxon et al.*, 121 Ala. 400, 25 South. 784.

But did plaintiff, by mailing the notice by registered letter to each one of said sureties, cause them to be bound? The jury have found by their verdict that plaintiff, through its agent, participated in the agreement with these sureties that said contract was neither to be a binding one until certain other persons signed as sureties, nor was the same to be delivered until then, but, disregarding this agreement, the said obligation was delivered to plaintiff. Plaintiff, when it sent the notice by registered mail to each one of these sureties, in law, had actual knowledge of this agreement, found by the jury to have been made between plaintiff, through its agent, and the principal in said obligation, with all of said sureties. Under such finding by the jury, what was plaintiff attempting to do in sending this notice to the defendants? Unquestionably attempting to vary the contract; in effect, attempting to make a new contract. That original obligation would not have become effective until all the parties agreed upon had signed it. Now, in effect, plaintiff, notwithstanding such agreement with said sureties, was attempting to make a contract, and cause it to be complete with only them on the obligation as sureties.

In the case of *Anderson v. Bellenger et al.*, 87 Ala. 336, 6

South. 82, 4 L. R. A. 680, 13 Am. St. Rep. 46, Mr. Justice Mc-
Clellan, speaking for the court, said:

"The contract of suretyship must be strictly construed in
favor of the surety. His obligation is voluntary, without any con-
sideration moving to him, without benefit to him, entered into for
the accommodation of his principal, and, generally, also for that
of the obligee; and courts see to it that his liabilities thus incurred
are not enlarged beyond the strict letter of his undertaking. To
the extent, and in the manner, and under the circumstances,
pointed out in his obligation, he is bound, and no further. His
contract cannot be changed in any respect. Whether an altera-
tion is or is not to his benefit is not open to inquiry. 'He has a
right to stand upon the very terms of his contract'; and, if a var-
iation is made which extends its liability 'to another person, or to
any other subject, or for any other period of time than such as
may be included in its words,' and he does not assent to it, such
variation is fatal to his obligation, whether he is injured thereby
or not."

See, also, *Miller v. Stewart et al.,* 9 Wheat. (U. S.) 680, 6
L. Ed. 189.

Did the sureties assent to the change of the agreement made
by them with the plaintiff through its agent? It is true plain-
tiff, by registered letter, notified defendants that it had approved
this bond. Plaintiff insists that, in order to prevent it from be-
coming a completed contract, they should have answered, and
then and there dissented. What duty did they owe plaintiff?
Could the plaintiff have been *bona fide* in approving this bond
and obligation, and notifying defendants, by said registered let-
ters, that it had approved it, thereby seeking to hold them as
bound, in the light of the finding of the jury? By such finding
plaintiff had knowledge of and was a party to a different agree-
ment, at variance thereto, to the effect that said obligation was not
to be a completed bond, nor delivered to plaintiff, until certain
parties had signed it. Now, in derogation of that contract, it is
turned over to plaintiff, and plaintiff, in effect, says: "Now, though
I know it is at variance with the agreement under which you

signed it, I serve notice on you now that I approve it." Where, under the facts found, could the question of good faith, even to create an estoppel, arise? But here, where it is necessary to show an express or implied assent, can you say that it exists as a matter of law? Plaintiff, through its agent, with the principal in the obligation, seeking out the sureties, and, either expressly or impliedly, soliciting them to sign this obligation under false representations and certain stipulations, and when it gets possession of the fruit of these false representations and stipulations, is it to be permitted to say to these men to whom such representations and stipulations have been made: "I have the bond. I approve it. I hereby notify you to that effect, and bind you as sureties for this past and pre-existing indebtedness?" Is this court to be judicially a party to consummating such a wrong? In order for these sureties to assent to this change or variation, it would have been necessary for the minds of these sureties to have concurred with that of plaintiff.

In the case of *Cartmel v. Newton*, 79 Ind. 7, Chief Justice Elliott, speaking for the court, said:

"Whether a change in a contract is or is not beneficial to a surety is not the subject of judicial inquiry. Courts will not attempt to determine whether a change in the terms of the contract will benefit or injure the surety. If it be shown that a change has been made without the consent of the surety, he may demand to be discharged. In the case before us the only contract to which the surety ever gave his consent was one providing that the principal should perform it within a designated period; and we can find no case which will warrant the conclusion that the creditor may suffer the time to be extended without the knowledge or consent of the surety. The rule in favor of granting the surety the full benefit of the letter of the contract ought not to be made to yield to the rule that time is not of the essence of the contract. * * * In order to constitute a contract, it is essential that the proposition of the one party should be assented to by the other, exactly as made. A contract is never created unless the minds of the parties agree upon one and the same thing. The proposition which the surety signed plainly and unequivocally

required that the notes and mortgage provided for should be executed within 10 days. This was a material ingredient of the proposition. The surety never signified his willingness to assent to any other contract. He did not become a party to any other."

In the case of *Fuller v. Kemp*, 16 N. Y. Supp. 160, Judge Bischoff, of the Common Pleas Court of New York City, said:

" 'Assent' is evidenced by a proposition emanating from one side, and acceptance of it on the other; the proposition and acceptance together constituting what is sometimes called a 'meeting of the minds.' "

Is there anything in this record to show that, after plaintiff, in derogation of its agent's agreement, secured possession of this contract and approved it as a completed bond, and so notified these sureties, there was ever a meeting or concurring of their minds with plaintiff's that it was to be treated or considered as a completed bond to secure Secor's pre-existing debt? They say that these sureties remained silent, but was there any duty *ex aequo et bono* for these sureties to speak out? and if they failed to speak, was that an assent that defendants had concurred in and ratified the new obligation? It is a well-settled principle of equity and right that no man shall receive anything by law except for valid consideration; and, whilst these instruments are incidents and extensively used in the commercial world, and large credits and advances are made upon the faith reposed in them in the various forms which they assume, as letters of credit, guaranties, etc., yet the law throws its proptecting shield around the man that has received no consideration, to the extent that he shall not be deprived of his accumulations or inheritance, unless he has assented thereto under the forms recognized by law. That assent should not be simply by silence when the other party is attempting to at least overreach him, and there is no consideration moving to him, or unless he remains silent under such circumstances as an honest man would speak out. Where the obligee has practiced misrepresentation and fraud upon the surety, he owes such obligee no duty.

The judgment of the lower court should be affirmed, and it is so ordered.

All the Justices concur.