## CITY OF TECUMSEH v. BURNS *et al.*

No. 1348.   Opinion Filed December 12, 1911.

(120 Pac. 270.)

1.   **CONTRACTS—Construction—Divisibility.** The contract sued on in this case was divisible, and contained two separate propositions of employment; the virtue of that embraced in the second and third items being dependent upon certain conditions precedent provided for in the first item.

2.   **MUNICIPAL CORPORATIONS — Contracts — Construction.** The proposition of employment embraced in items 2 and 3 of the contract sued on, being dependent upon the voting of bonds, or the raising of funds in some other manner, for the construction of the waterworks system, and the said system of waterworks provided for by the preliminary survey under item 1 not having been approved and ordered constructed by the city council, the said items 2 and 3 thereby failed to become effective; and this was the intent and understanding of the parties at the time the contract was executed.

3.   **CONTRACTS—Construction—Intent of Parties.** In arriving at the intention of the parties to a contract, the whole instrument must be read together, and, if possible, every part thereof should be made effective, giving to the words and terms thereof their ordinary and generally accepted use and understanding.

(Syllabus by Robertson, C.)

*Error from District Court, Pottawatomie County; W. N. Maben, Judge.*

Action by C. S. Burns and another against the City of Tecumseh.   Judgment for plaintiffs, and defendant brings error. Reversed.

*W. R. Asher* and *T. G. Cutlip,* for plaintiff in error.

*B. B. Blakeney* and *J. H. Maxey,* for defendants in error.

Opinion by ROBERTSON, C.   This action was begun in the district court of Pottawatomie county by the defendants in error, who hereinafter will be called plaintiffs, against the city of Tecumseh, hereinafter designated as defendant, to recover the

sum of $1,050, alleged to be due them by virtue of a certain written contract purporting to have been executed by said parties on November 21, 1905.

Said contract consists of three separate items, the first of which provides for the making of a preliminary survey preparatory to the installation of a system of waterworks in said city, and which preliminary survey was to be made by the plaintiffs for said city, and for which the city was to pay the sum of $150. Under this item, the plaintiffs made the preliminary survey, and made a report to the city, and were paid therefor the sum of $150. This item is not in dispute in this case, so far as the contention of the city is concerned; nor do the plaintiffs claim that the city owes them under said item. It is the contention of plaintiffs that the contract sued on is single and indivisible, and embraces but one employment, and that by its terms they were employed by the city to make the complete survey, plans, and specifications for the waterworks system, and after the completion of the preliminary survey to immediately proceed, under items 2 and 3, and complete the permanent and final survey, plans, and estimates. The city, on the contrary, insists that this contract is divisible, and embraces two separate propositions of employment, the validity of the second of which depends upon the performance of certain conditions precedent, i. e., the adoption by the city of the preliminary plans and estimates provided for in item 1, and also the voting of bonds, or the raising of funds by some other method, for the construction of the waterworks system, as provided in said preliminary survey; and that, unless the city council approved and adopted the said plans and estimates submitted by plaintiffs, under the provisions of item 1, then no further expense should accrue under items 2 and 3.

It was on this theory that the case was tried in the court below, and on page 57 of the record, the court, in sustaining the objection of plaintiffs to the introduction of certain evidence by the city, tending to establish a defense on a different theory, said:

"The theory under which this case will proceed is this: The plaintiffs were not authorized to do any work prior to the voting

of the bonds, and before any bonds were voted they were instructed not to do the work. Then any work they did after that time was voluntarily done for the purpose of attempting to enforce the contract. Now it seems to me that the measure of damages would be, in this contract, if they are entitled to recover, first, nominal damages for breach of contract, if any; and, secondly, the difference between the contract price for this work and the sum, or whatever would be required to do the work—the cost of doing the work."

No objection was made by counsel for the plaintiffs to this declaration or statement on the part of the court, and immediately after such statement by the court plaintiffs asked leave to reopen their case and submit proof as to the amount of damage incurred, according to the ruling of the court above set out (Record, page 59), which permission was granted by the court. It is apparent, therefore, that this was the theory upon which plaintiffs tried the case, and, of course, they will not be permitted to abandon that theory here, and proceed upon another, which may be more favorable. At the close of plaintiffs' testimony, the city demurred to the evidence, which demurrer was by the court overruled, and the city assigns this ruling of the court as error, and relies upon the same for a reversal.

The preliminary survey provided for by item 1 of the contract was completed and submitted to the city some time in January, 1906. On the 5th of March, 1906, the city council decided that the further services of Burns & McDonnell would not be required, and ordered the clerk to notify them to that effect. At the same meeting, however, it was decided to call an election for waterworks bonds in the sum of $60,000. On the 15th day of March, 1906, by resolution, the mayor and the city clerk of said city were authorized to sign a contract with the O'Neil Engineering Company for plans and specifications for the construction of a waterworks system in the city of Tecumseh. It thus appears that the preliminary survey, as furnished by the plaintiffs, was not satisfactory to the city, and was not approved and accepted by the city, but, on the contrary, a different set of plans and specifications were desired, and, as the record shows, the water-

works were constructed in accordance with the terms of the latter contract. Some two years after this the plaintiffs filed suit against the city for the full amount which would have been due them, had the city adopted their plans and constructed the waterworks system in accordance therewith, which at 2 per cent. of the contract price would amount to $1,050, less $150, for item 1, which had already been paid.

The plaintiff R. E. McDonnell testified in his own behalf at the trial, and, among other things, stated that, while he prepared the permanent plans and specifications under items 2 and 3, yet he never presented them to the city, for the reason that their contract had been terminated (Record, page 38); also, in answer to a question propounded:

"Q. Then all the work done under 2 was done while you were doing work under item 1, complying with the contract? A. Yes, sir." Record page 45. And: "Q. Was there anything else you did in regard to the second item before this notice was served on you? A. No; I don't recall anything else. Q. Do you state to this court and jury that you did any work under item 2 after you received that notice? A. I can't recollect whether I did any work, or whether I had it all completed at the time." Record, page 48. "Q. Now, when did you furnish that to the city? [Meaning the final plans.] A. I never submitted these to the city after we received notice." Record, page 49. "Q. And all the data you had in and about this preparation you obtained from this preliminary survey that you were paid for, is that right? A. Yes, sir."

Thus it will be seen—in fact, it is not denied anywhere in the record—that the entire work in and about the preparation of the final plans and specifications was completed long before any bonds were voted, and also before notice had been sent to plaintiffs by the city that their preliminary plans would not be adopted; and it also appears that all the data used by plaintiffs in preparing the final plans and specifications were secured by them while making the preliminary plans and specifications, and that they never, at any time, notified the city that they were making the final plans and specifications; nor did they ever furnish them to the city, either before or after the notice from the city that the preliminary

plans would not be followed, and their services not needed; The record also discloses that the city at this time, as it had a right to do, was figuring with other concerns for plans and specifications, and that, in the judgment of the council, a better proposition was submitted by other concerns, and was accepted by the city.

The language of the instrument seems to sustain the contention of the city that item 1 was a complete contract in itself, and recognized as such by the parties at the time it was made and entered into. Under item 3, in a note (showing that special attention was given the subject at the time), occurs the following:

"It is hereby understood and agreed that the work included under items 2 and 3 will not be completed until after bonds are voted so that if bonds are not voted or funds otherwise provided there shall be no additional expense for items 2 and 3."

In the examination of McDonnell, one of the plaintiffs, he testified that he had drawn the contract himself, and under the uniformly followed rule in construing contracts any ambiguity therein shall be construed as against the party who used the language in drawing the instrument, and while this provision above set out contains the word "completed," yet, viewing the entire paragraph and comparing it with the whole contract, we are warranted in saying that it in effect meant that no work should be performed and completed under items 2 and 3 until the bonds had been voted, or funds provided for in some other manner. Also in item 2 occurs the following, "After bonds have been voted, or funds otherwise provided for the plant, to make complete plans for working drawings of all parts of the system," etc., and it goes on and provides for the making of final plans and specifications.

It seems to us from the reading of the entire contract sued on that the contention of the defendant ought to be sustained; that the intent of the parties, as gathered from the language of the instrument itself, was that the services under items 2 and 3 were not to be rendered by the plaintiffs unless the preliminary survey and plans should be accepted and approved by the city council, and bonds voted thereunder for the particular kind of system of waterworks provided for. We are also warranted in arriving at

this conclusion by the conduct of the parties prior to March 10th, the date when the city notified plaintiffs that their services would be no longer needed. The record shows, beyond any question, that the city council were of opinion, and acted accordingly, that the proposition of plaintiffs, as submitted November 21, 1905, was for a "preliminary survey" only; in fact, the city's main contention and defense in this suit is to that effect, and denies that the contract sued on was in fact the contract made and entered into by the city, but, on account of the careless manner of conducting the city's business, that phase of the case will not now be considered.

The court below in effect held that, even though the contract sued on was not the contract made and entered into by the city council on November 21, 1905, yet, inasmuch as the same had been by the city clerk entered in full on the minutes, and those minutes later read and marked approved, that the approval thereof was in effect a ratification of the original contract, and therefore refused admission of the testimony of members of the city council and the city clerk, whereby it was attempted to show that no such contract was ever, in fact, agreed upon by the parties. The court rejected the proffered testimony, on the ground that the city was thereby attempting to vary the terms of a written instrument by parol evidence. According to our notion, the real purpose of the city was to show by such testimony that the *contract itself* was not in fact made, but that only item 1, which provided for the preliminary survey, was made, in which case parol evidence is always admissible, as it is a well-settled principle that, where, by reason of fraud or mistake of fact, the execution of an instrument has been secured, parol evidence is admissible to establish such fact, not to vary the terms, but to establish whether or not such contract was entered into. However, the discussion of this question is of no value to us at this time, and we do not rely upon that assignment of error, believing that it is unnecessary, as the case can be disposed of without deciding that point; and therefore we express no opinion as to the merits of that assignment of error, believing, as we do, that the terms of the

contract as written, whether made by the city or not, do not warrant or authorize the judgment of the lower court as entered.

The contract, treated as a whole, and giving to the words and terms used therein their ordinary and generally accepted meaning and understanding, convinces us that the intent of the parties at the time the same was executed, was to employ plaintiffs to make the preliminary survey, and to pay them therefor the sum of $150, when it should be completed and delivered to the city; and that the city council, from this preliminary survey and the report and the estimates accompanying it, were to determine whether or not the city wanted such a system as that outlined therein, and, if this question should be determined in the affirmative, then the plaintiffs were to proceed with the final survey, plans, and estimates, as provided for in items 2 and 3, and by the very terms of the instrument the services under items 2 and 3 were not to be rendered until the condition precedent to the adoption of the final survey, i. e., the voting of the bonds, or the raising of funds by some other method, had been performed; and that, according to the theory of the case as tried in the lower court, the plaintiffs were not authorized to perform any work under items 2 and 3 until the bonds had been voted, and none after the notice had been given by the city, on March 10th, that their services would be no longer needed.

Had the city council accepted the preliminary plans and estimates of the waterworks system, as prepared and furnished by plaintiffs, and then called an election for the purpose of voting bonds to raise money with which to install the proposed system, and the proposition had carried, and bonds issued, or funds for that purpose raised in some other manner, then, under the terms of the contract, undoubtedly plaintiffs would have been entitled to recover, but even then only in such sum as the services actually rendered would have been reasonably worth. As it is, they were not entitled to recover at all, and the demurrer to the evidence should have been sustained by the court. In arriving at this conclusion, we have been guided by the fundamental rules of construction of contracts. We have gathered the intentions of the

parties from the instrument itself, and have ignored many side questions raised in the briefs; for those questions are all without the case, and can only result in confusion, as they did in the trial below, and in the misapprehension of the issues involved in the case. The assent of the city to the contract was obtained by a proposition coming from plaintiffs; the proposition, whatever it may have been, was included in the instrument, and the parties by signing it thereby agreed that such instrument represented the full and complete agreement, or the meeting of their minds, without which no contract is effective. *Lemp Brewing Co. v. Secor,* 21 Okla. 537, 96 Pac. 636.

In arriving at the intention of the parties to the contract, the whole instrument must be read together, and, if possible, every part thereof must be made effective. *Hanna v. Mosher,* 22 Okla. 501, 98 Pac. 358. We therefore find that, by the terms of the contract sued on, plaintiffs were not warranted in performing the services under items 2 and 3 until the preliminary survey, plans, and estimates had been approved by the city, and bonds voted, or funds raised in some other way, for the construction of the proposed waterworks system; that the city had paid plaintiffs for the services rendered under the provisions of item 1, and that no liability, as against the city and in favor of plaintiffs, existed at the time the suit was instituted, under and by virtue of the terms and conditions of items 2 and 3 of said contract, which never did become effective; that the evidence introduced by plaintiffs in support of the allegations of their petition clearly shows that they were not entitled to recover; and that the court erred in overruling the demurrer of the city, timely interposed; and for the error of the court in thus overruling the demurrer of the city, as aforesaid, the judgment of the district court of Pottawatomie county should be reversed.

By the Court: It is so ordered.

All the Justices concur.