## GEM OIL CO. v. CALLENDAR.

No. 8919—Opinion Filed May 1, 1918.

Rehearing Denied July 16, 1918.

(173 Pac. 820.)

### 1. Oil and Gas—Contract—"Proposed."

The word "proposed" in a binding contract for the payment of $3,000, "if a well proposed to be drilled upon certain land proves a commercially paying oil or gas well," must, in construing such contract, be defined as fixed intention on the part of the promisor fully known to the promisee at the time the contract was entered into that a well was contracted to be drilled upon the land referred to in the contract.

### 2. Compromise and Settlement—Condition.

The Gem Oil Company entered into a binding contract with J. J. C. in settlement of an existing liability to pay J. J. C. $3,000 if a well proposed to be drilled upon lands leased to Gem Oil Company proved to be a commercially paying oil or gas well, and shortly thereafter sold the lease on which the well was to be drilled, and the purchaser thereof developed a commercially paying gas well upon said land. Held, that upon the development of a commercially paying gas well upon the land in question the Gem Oil Company became liable to J. J. C. for the payment of said $3,000.

(Syllabus by Collier, C.)

Error from District Court, Tulsa County; W. J. Campbell, Judge.

Action by J. J. Callendar against the Gem Oil Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Poe & Lundy, for plaintiff in error.

H. B. Martin and R. A. Reynolds, for defendant in error.

Opinion by COLLIER, C. This is an action brought by the defendant in error against the plaintiff in error to recover damages for the breach of a contract. By stipulation of counsel a jury was waived, and the case tried to the court. The petition contained two causes of action, but by stipulation the first cause of action was dismissed, and a cross-action filed by the plaintiff in error was also dismissed, and the trial limited to the second cause of action pleaded in the plaintiff's petition. The court found in favor of the defendant in error in the sum of $3,000, and rendered judgment accordingly, to which the defendant in error duly excepted. Timely motion for a new trial was filed, overruled, and excepted to. Hereafter the parties will be designated as they appeared in the trial court.

The second cause of action, omitting the formal parts, is as follows:

"And plaintiff for his second and further cause of action against the defendant says and avers: That the defendant is now, and has been at all times hereinafter mentioned, a corporation organized and existing under and by virtue of the laws of the state of Oklahoma, engaged in the general business of buying and selling oil and gas mining leases and mining for the production of oil and gas, having its principal office and place of business at the city of Tulsa, in the state of Oklahoma.

"That heretofore, to wit, on or about the 1st day of March, 1913, the plaintiff and the defendant made and entered into their certain contract in writing by the terms of which the defendant agreed, in consideration of certain services rendered, to pay to the plaintiff the sum of $500 cash and the further sum of $500 when and if a well then drilling or about to be drilled by or for the defendant, near Owasso, by one Wayne Kingsbury, should be drilled in and prove a commercially paying oil and gas well, and the further sum of $1,000 when and if a well proposed to be drilled by the defendant in section 15, township 17 north of range 12 east, in Oklahoma, should be drilled in and should prove a commercially paying oil and gas well, and the further sum of $3,000, when and if a well proposed to be drilled by the defendant on any of its leases in sections 14 or 15, township 20 north of range 13 east, in Oklahoma, should be drilled in and prove a commercially paying oil or gas well.

"And plaintiff avers that said contract was entered into on behalf of the defendant, through its president and managing officer, R. A. Josey, who was duly authorized thereto by the defendant. A true, full, and complete copy of said written contract is hereto attached, marked Exhibit A, and made a part of this petition the same as if herein in full set out.

"And plaintiff avers that the word 'proposed,' as used in said contract, was intended by the parties, at the time of the execution of said contract to mean a positive engagement on the part of the defendant to drill said wells, and all of them, within a reasonable time thereafter, and that it was the intent of the plaintiff and the defendant in executing said contract that the engagement of the defendant evidenced thereby to drill said wells should be an unconditional promise.

"And plaintiff avers that he has fully performed on his part all of the conditions and obligations by him to be performed under the terms of said contract but that the defendant has wholly failed, neglected, and refused to perform said contract, except that it has paid to the plaintiff the sum of $500 pursuant to the engagements of said con-

tract, and that the defendant drilled the well agreed to be drilled by it in said contract near Owasso, which was described as being drilled by one Wayne Kingsbury, and that said well proved a failure, and that thereafter the defendant drilled another well proposed by it in said contract to be drilled in section 15, township 18 north of range 12 east, and plaintiff avers that in said well oil was found in commercially paying quantities, but that the defendant has wholly failed, neglected, and refused to pay to the plaintiff the sum of $1,000 at the time of the completion of said well or at any other time.

"And plaintiff says that the defendant has further broken said contract in that after the execution and delivery thereof, and without the consent of this plaintiff, the defendant sold and assigned, on or about the — day of ——, 1914, all its leases in sections 14 and 15 in township 29 north of range 13 east, and that the assignee of said leases has heretofore drilled upon said leases three commercially paying gas wells, but that the defendant has wholly failed, neglected, and refused to pay to the plaintiff the sum of $3,000 promised and agreed to be paid to the plaintiff when and if a well in said territory should be drilled in by the defendant which produced oil or gas in commercially paying quantities—all to the damage and injury of the plaintiff in the sum of $4,000.

"Wherefore, plaintiff prays judgment against defendant upon his second cause of action for the sum of $4,000 and the costs of this action."

Exhibit A, referred to in the petition, and attached thereto, is as follows:

"Exhibit A.

"Memorandum of agreement made this March 1, 1913, between Gem Oil Company, first party, and J. J. Callendar, second party, witnesseth: That the first party has agreed to pay and second party has agreed to receive in full for all services of the second party to date the sum of five hundred dollars ($500.00) cash, the receipt of which second party acknowledged, the further sum of five hundred dollars ($500.00) to be paid when and if the well now drilling or about to be drilled by or for the first party near Owasso by Wayne Kingsbury is drilled in and proves a commercially paying oil or gas well, the further sum of one thousand dollars ($1,000.00) when and if a well proposed to be drilled by first party in section 15, township 18 north, range 12 east, is drilled in and proves a commercially paying oil or gas well, the further sum of three thousand dollars ($3,000.00) when and if a well proposed to be drilled by first party on any of its present leases in sections 14 or 15, township 20 north, range 13 east, is drilled in and proves a commercially paying oil or gas well.

"Witness the hands and seals of the parties the day and year first above written.

"Gem Oil Company,
"By R. A. Josey, Prest.
"J. J. Callendar."

The defendant demurred to plaintiff's second cause of action for the reason that "the same failed to state facts sufficient to constitute a cause of action against the defendant." The demurrer was overruled, and exception saved, but the action of the court thereon is not assigned as error.

After the overruling of the demurrer, the defendant filed an answer, which, omitting the formal parts, and that part dismissed by stipulation, is as follows:

"Comes now the defendant, the Gem Oil Company, and for answer to plaintiff's petition denies each and every fact, matter, and thing in said petition alleged, and each and every fact, matter and thing in plaintiff's first cause of action alleged, and each and every fact, matter, and thing in plaintiff's second cause of action alleged not herein specifically admitted.

"The defendant admits that it is a corporation organized under the laws of the state of Oklahoma.

"The defendant, for its second defense to both of plaintiff's causes of action, and for answer to plaintiff's second cause of action, and for cross-petition against plaintiff, alleges: The defendant admits the execution of the written contract attached to plaintiff's petition, marked Exhibit A, and denies each and every other fact, matter, and thing in said cause of action alleged."

The execution of the contract, a copy of which is attached to plaintiff's petition as Exhibit A, is admitted in the answer, and the uncontradicted evidence shows that after the execution of said contract the defendant sold and assigned its leases in section 14 or 15, township 20 north, range 13, and that thereafter wells were drilled upon the land to which the $3,000 payment of the contract refers. The evidence as to whether or not the wells drilled upon said land developed oil or gas in commercial paying quantities was in conflict.

When the parties rested there was no evidence before the court that the well that had been bored produced gas or oil in commercial quantities, and the defendant demurred to the evidence, and against its objection and exception, the plaintiff was permitted to open the case, and to introduce the following evidence: J. W. Stoneking testified that he resided at Tulsa; that the company with which he was connected had drilled wells in sections 14 and 15, township 20 north, range 13 east, in the acreage assigned from the Gem Oil Company; that four wells

had been put down on the leases they acquired from the Gem Oil Company; that they were drilled in 1914 and 1915, three of which were in 1914; that No. 1, on the Goodrich, was drilled November 3, 1914, No. 2, on the Goodrich, was drilled December 18, 1914, and the well on the Robertson was completed October 30, 1914, and the No. 3, Goodrich, February 9, 1915; that gas was found in these wells in commercial quantities; that gas was found which was utilized, and put into the lines; that the company distributes and sells gas, and these wells were used in that way; that these wells produced from 3,000,000 to 5,000,000 feet of gas per day; that in the opinion of the witness the wells produced gas in paying quantities; that no wells were drilled on said leases that were a failure; that three of these wells were plugged and at the time they were plugged they were not commercially paying; that a test was made October 18, 1915, and that the volume at that time was 380,160 feet; that, taking into consideration the cost of drilling the wells, installing the machinery, and the necessary connection with the pipe line to market its production, the wells had been commercially paying; that after the well had been operated about a year its production had gone down from its original capacity to 380,000 feet.

The evidence of the defendant was that never since the wells on said leases in question had been bored could they or either one of them be operated and be a paying well; that said wells nor neither one of them could not be operated so as to produce an amount in excess of the expenses of their operation; that the principal well was not worth $1,000, except for the casing and machinery that was on or in it.

The defendant then introduced F. B. Long, who testified that he was secretary of the Gem Oil Company; that at the time these leases were transferred by the Gem Oil Company they were transferred because they were regarded as of no value; that in selling the leases he figured up just what the company had been out, and did not charge even any overhead expenses on them in the transfer; that the witness did not believe that with the rock pressure, working pressure, and the volume as given by a former witness, the four wells, or any one of them, could have been operated as a commercial paying well by the Gem Oil Company; that at the time of the sale of the leases the company was of the opinion that the leases were worthless, that the company bored it for oil, then figured it a dry hole proposition, and were surprised in the gas well development, and when all of them were nice

wells they were more surprised; that there never were any dry holes on the leases and no dry holes offsetting these leases.

The court made the following findings of fact:

"The court finds that the parties entered into the contract which is attached to the petition herein, and that plaintiff and defendant have admitted the execution of the contract in question.

"The court finds that within a short time after the contract in question was entered into the defendant assigned its leases upon the land referred to in the contract as being in sections 14 and 15, in township 20 north, range 13 east, to another company before the defendant had drilled any wells upon its leases in the said sections.

"The court finds that the defendant received a consideration for said assignment, which is a sufficient and adequate consideration, and that such consideration was actually paid to it at the time said leases were assigned, and before any well was drilled upon the land embraced in the leases so assigned; that shortly after the assignment of the leases by the defendant the assignees of the defendant entered upon and drilled four wells upon the leases in question, and that the first well drilled produced gas in quantities from 3,000,000 to 5,000,000 cubic feet per day, which is the initial production of the well so drilled, and that that well was drilled and was operated for a period of a little more than two years before it was abandoned.

"The court finds that the well in question was a producing well, and produced gas in commercial quantities within the meaning of the contract between the parties pleaded by the plaintiff.

"The court further finds that three other wells have been drilled upon these tracts of land included in the leases assigned by the defendant, and being within sections 14 and 15 named in the contract, and that each of the additional wells drilled have produced gas in commercial quantities.

"The court finds that the sum of $3,000 referred to in the contract has not been paid by the defendant to the plaintiff, or by the assignees of the defendant to the plaintiff, and the plaintiff has never received this $3,000 referred to in the contract, or any part of it.

"The court finds that there is due the plaintiff from the defendant by reason of the facts proven in this case and finds herein the sum of $3,000 with interest from—I don't have any idea about the dates—the 1st day of January, 1915; it was 1914, I believe, that the leases were assigned—probably before that time. The court concludes as a matter of law that the defendant is liable to the plaintiff for the amount of $30,000, with in-

terest upon the findings of fact herein now made by the court. The court concludes that the assignment of the leases in question after the execution of the contract was a breach of the contract by the defendant and operated to render the drilling of the well in question impossible by the defendant.

"The court concludes further that the drilling of the well after the assignment of the leases by the assignees in such assignment and the finding of gas in paying quantities was the performance of the conditions of the contract, such as is required in order to make the defendant liable on the contract to the plaintiff for the payment of the sum of $3,000 with interest and damages.

"The court further concludes that the judgment in this case should be in favor of the plaintiff for the sum of $3,000, with interest from January 1, 1915.

"The court concludes that the word 'proposed,' as used in the contract, means contemplated and intended, and that such term denotes fixed intention on the part of the defendant fully known to the plaintiff at the time the contract was entered into that a well would be drilled upon the lands referred to in the contract."

There are numerous assignments of error, but it is asserted in the brief of the defendant:

"That this case turns squarely on the proper interpretation of the contract in question, since it is not disputed, and upon the sufficiency of the evidence to sustain the judgment of the court."

And in the brief of the plaintiff it is said:

"That the only question before this court is as to the construction placed upon the written contract by the learned trial court, and whether or not the judgment rendered therein is supported by the findings of fact made by said court."

We agree with these contentions of the parties, and will therefore confine our review of the case, first, to an interpretation of the contract; second, to a consideration of whether or not the findings of the court are sufficiently supported by the evidence.

Much argument is given in the brief as to the correct definition of the word "propose" used in the contract, and we are of the opinion that the finding of the court that "the word as used in the contract means contemplated and intended, and that the term denotes fixed intention on the part of the defendant, fully known to the plaintiff at the time the contract was entered into that a well would be drilled upon the lands referred to in the contract," is correct.

Section 954, Revised Laws 1910, provides:

"The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning. * * *"

Defining the word "propose" as we think correctly defined by the trial court, it is clear that the contract under consideration is a contract in which there was a settlement between the parties thereto of some existing liability, and in which it was agreed on the part of the defendant to pay to the plaintiff in addition to other payments named in the contract the sum of $3,000 in the event the well contracted by said defendant to be drilled on the leases in sections 14 or 15, township 20 north, range 13 east, is proved a commercially paying well, and we are therefore of the opinion that the liability of the defendant for the payment of said $3,000 turns upon the fact that commercially paying oil or gas wells were produced in said lands; in short, whether or not the gas or oil wells to be drilled by the party of the first part were drilled by the party of the first part, or by another holding under a transfer of the leases, that the development of commercially paying gas or oil wells upon said leases fixed the liability of the defendant.

Commercially paying gas wells having been developed on the leases in question, we are of the opinion that such fact fixed the liability of the defendant as adjudged by the trial court, and it is unnecessary to determine whether or not the transfer of said leases by the defendant was such a breach of the contract as to entitle the plaintiff to recover the $3,000 recovered.

"The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties thereto as expressed therein, and give effect to the same if it can be done consistently with legal principles. In arriving at the intention of the parties to a contract, the language used therein, if clear and explicit and does not involve an absurdity, governs in the interpretation. The whole instrument should be read together, and, if possible, every part thereof should be made effective, giving the words and terms thereof their ordinary and accepted use and meaning." Brown et al. v. Coppadge et al., 54 Okla. 88, 153 Pac. 817.

In the City of Tecumseh v. Burns et al., 30 Okla. 503, 120 Pac. 270, it is held:

"In arriving at the intention of the parties to a contract, the whole instrument must be read together, and, if possible, every part thereof should be made effective, giving to the words and terms thereof their ordinary and generally accepted use and understanding."

In Lamont Gas & Oil Co. v. Doop & Frater, 39 Okla. 427, 135 Pac. 392, it is held:

"The intention of the parties must be deducted from the entire agreement, and not from any part or parts of it, because where a contract has several stipulations, it is plain that the parties agreed that their intention was not expressed by any single part or stipulation of it, but by every part and provision in it, considered together, and so construed as to be consistent with every other part."

Kansas City Bridge Co. v. Lindsey Bridge Co., 32 Okla 31, 121 Pac. 639; 2 Ruling Case Law, §§ 225 to 227, inclusive.

Section 951, Rev. Laws 1910, reads:

"The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

Section 953, Rev. Laws 1910, reads:

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect, if it can be done without violating the intention of the parties."

Applying the foregoing rule and principle to the instant case, we are of the opinion that upon proof of the execution of the contract, and the development of paying wells of gas or oil on the leases transferred by the defendant subsequent to the contract by the defendant, under the contract the plaintiff was entitled to recover the judgment awarded in the sum of $3,000.

As previously said, the evidence as to whether or not the wells on said leases in sections 14 or 15, township 20 north, range 13 east, were commercially paying wells, was in conflict, but we think there was sufficient evidence to sustain the findings of the court that the wells in question produced "gas in commercial quantities within the meaning of the contract between the parties," and that the court did not err in overruling the demurrer to the evidence.

In Loomer v. Walker, 59 Okla. 44, 157 Pac. 1055, it is held:

"It is a well-established rule in this jurisdiction that, where the only error assigned on appeal in a law case tried to the court is that the evidence was insufficient to support the judgment, the Supreme Court will not weigh the conflicting evidence, but, if it be found that there was any evidence reasonably tending to support the judgment, it will be affirmed."

See Pool et al. v. Burger Bros., 56 Okla. 243, 155 Pac. 1144.

Finding no error in the record, this cause is affirmed.

By the Court: It is so ordered.