Davis *et al. vs.* The Atlanta National Bank.

A note due six months after date and payable to Neal or bearer, is negotiable, and if two sign it as sureties, and entrust it to the principal debtor or maker, who places it in the hands of bearer as collateral to secure another note given by the maker, the sureties are not discharged from paying it, though they expected it to be used only to borrow money for the principal from Neal.

Promissory notes. Principal and surety. Before Judge HILLYER. Fulton Superior Court. October Term, 1880.

In this case three appeals were consolidated and tried together by order of court. The suit was originally begun in a justice's court on three notes, which read as follows :

$100.00.   Six months after date we or either of us promise to pay John Neal or bearer one hundred dollars, to bear two per cent. per month until paid.   Value received this February 15th, 1875.
[Signed].                            L. H. DAVIS,
                                     A. B. DAVIS, *Sec'ty*.
                                     C. C. DAVIS.

The second note was identical with the first, and the third also, with the exception that the amount was fifty. dollars.

After the general issue the following pleas were filed by the defendants :

(3). That said notes sued on were made by A. B. and C. C. Davis as sureties for the said L. H. Davis, with the express understanding and agreement that they were to be used by the said L. H. Davis for the purpose of obtaining a loan of money amounting to two hundred and fifty dollars for his sole benefit from John Neal, and that the said L. H. Davis failed to obtain a loan on the same from the said John Neal, and thereupon, without the consent or knowledge of these defendants, deposited the said notes with the plaintiff as collateral security for his own note for two hundred and fifty dollars, with interest at twenty per cent. per annum, and all costs and attorneys' fees, bearing same date and due at same time as the said notes sued on, and that there was never any lawful delivery of the said notes sued on to the said plaintiff, and that the said plaintiff did not advance any money on the said notes sued on, and only advanced to the said L. H. Davis the sum of $227.50 on his own note, on which these defendants were not securities, which was such a perversion of said notes from the original intent of these defendants, which intent was known to the plaintiff, as discharged these defendants from any and all liability on said notes.

(4). That it is the universal custom of all banks to give

notice to the makers of negotiable paper held by them before maturity, and that the plaintiff failed to give any notice whatever to any of defendants that it held these notes sued on, at any time until suit was brought on the same, and these defendants, A. B. and C. C. Davis, did not know that said notes were held by plaintiff, or had been negotiated at all by the said L. H. Davis, and that the said L. H. Davis was solvent at the time of the maturity of said notes, and abundantly able to pay the same, and these defendants could and would have protected themselves if they had known said notes were outstanding, and that said L. H. Davis has since become totally insolvent, and by reason of the said conduct of the said plaintiff these defendants have been discharged from any and all liability on said notes.

(5). That the said plaintiff, after the maturity of said notes sued on, delivered the said notes to Haslett & Johnston without the knowledge or consent of these defendants, and that the said Haslett & Johnston brought suit on the same against these defendants and L. H. Davis, which suit was dismissed on the trial because of the want of title in said Haslett & Johnston to said notes, and that said notes were afterwards returned by the said Haslett & Johnston to the plaintiff after they had kept them a year or other long space of time, without any shadow of right or title to them, and these defendants say that the said conduct of the said plaintiff was such as placed it out of its power to bring suit on said notes during said time, and exposed these defendants to greater liability and increased their risk and discharged them.

The pleas, numbered 4 and 5 above, were stricken. The evidence showed that A. B. and C. C. Davis signed as securities; that they did so to assist their brother, the principal, who expected to borrow $250.00 from John Neal; that they delivered the notes to their brother, after signing, and knew nothing of their possession by the bank until sued on them; that L. H. Davis did not obtain

money from Neal, but discounted his own note for $250.00 at the bank, and gave the notes sued on as collateral security, and that the bank took them before due and without notice of any agreement about them between the maker and his sureties.

The jury found for the plaintiff. Defendants moved for a new trial, which was refused, and they excepted.

D. F. & W. R. HAMMOND; A. C. KING, for plaintiffs in error.

HOPKINS & GLENN, for defendant.

JACKSON, Chief Justice.

The plaintiffs in error entrusted to the maker of the promissory notes, the said notes with their names on them as sureties. They were payable to Neal or bearer.

The maker did not get the money from Neal, as perhaps was expected, but got it from the bank on a bankable paper of his own secured by these notes as collateral. Thus they were put in circulation by the maker and got into the hands of the bank. The sureties claimed to be discharged because their contract was broken and their risk increased.

Their contract was to pay these notes unless the maker paid them to whomsoever might be their bearer. The bank became legally the bearer and entitled to be paid. It received them before due, and knew nothing of any agreement outside of the face of the paper. The sureties put the notes in the hands of their brother, the maker, for the purpose of getting money on them. If from Neal, well; if not, then from bearer. The bank became bearer and let the brother have the money. The sureties ought *ex aequo et bono* to pay them, and the law makes it their legal duty, we think, to do so. Code, §2785.

If they did expect the brother to borrow from Neal, and instead of doing so he got the money from another who knew nothing of their expectation, it can make no

difference. Their contract is to pay bearer. The notes are the same as if generally to bearer. Daniel on Neg. Ins., §105.

The very terms are in the alternative—Neal or bearer—and the meaning is to pay either.

That the bank took the notes as collateral, does not affect their right to collect. It is on the same footing as a purchaser still. Code, §2788.

The contract was not then changed so as to release the sureties. Was anything done by the bank to increase their risk? Their failure to sue did not legally increase it so as to discharge them. They could have paid the notes and sued them, or given notice to the bank to sue. It is no answer that they did not know that the bank had them. There is no proof that they tried to pay them to Neal, or called on him to pay them, or made inquiry of their brother touching what had become of the notes, or whether they were paid, or who held them. The bank had six years within which to sue the notes, and no *laches* or neglect of legal obligation is chargeable to it, unless it had notice to sue.

On the contrary, the *laches* is that of the sureties. They neglected to look after their paper, which they had authorized to be put in circulation by the maker to raise money for him, who was their brother; they put it in his power to use their names as sureties to borrow from bearer; he did so borrow by virtue of the notes as collateral thus given by them; and even if he deceived them and had actually contracted by word of mouth with them not to borrow except from Neal, (which would have been a queer contract, by the way, for it is hard to see without proof why they cared from whom he got the money), even if he deceived them the bank was innocent, and conceding their innocence too, yet they put it in his power to use the notes, and they must suffer rather than the bearer of the paper, because where one of two innocent parties puts it in the power of a third to do wrong to one of them, he must suffer rather than him who was wronged without any fault at all.

Therefore, it seems to us that these sureties are not discharged either by alteration of their contract or by any increase of their risk by the conduct of the bank. Their contract has not been at all changed, either in amount, interest, or time of payment.

· It stands as they made it in writing without jot or tittle of change. The bank never indulged the maker a moment, for any consideration, nor did it do any other act or neglect any legal obligation which increased the risk of the sureties so as to release them on that ground.

The verdict is right and the judgment must be affirmed.

Judgment affirmed.