## BROWN *et al.* v. COPPADGE *et al.*

No. 5234. Opinion Filed December 14, 1915.

(153 Pac. 817.)

1. **CONTRACTS—New Agreement—Effect.** A written contract may be discharged, rescinded, altered, or changed at any time before the performance thereof is due, by the execution of a new agreement in writing; and when such is done the terms and provisions of the new agreement govern as to the rights of the parties thereto.

2. **CONTRACTS—Construction—Intent.** The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties thereto as expressed therein, and give effect to the same if it can be done consistently with legal principles. In arriving at the intention of the parties to a contract, the language used therein, if it is clear and explicit and does not involve an absurdity, governs in the interpretation. The whole instrument should be read together, and if possible, every part thereof should be made effective, giving the words and terms thereof their ordinary and accepted use and meaning.

3. **SAME—Question for Court.** Where a written contract is clear, explicit, and unambiguous, it is the duty of the court to construe the same.

(Syllabus by Dudley, C.)

*Error from District Court, Kay County;*
*W. M. Bowles, Judge.*

Action by C. R. Brown and another against Mrs. Ethel E. Coppadge and another. Judgment for defendants, and plaintiffs bring error. Affirmed.

*W. A. Smith* and *Stacy Wells,* for plaintiffs in error.

*J. E. Curran,* for defendants in error.

Opinion by DUDLEY, C. In April, 1912, the plaintiffs in error, plaintiffs below, commenced this action in the district court of Kay county against the defendants

in error, defendants below, to recover $37,950 damages for the alleged breach of certain contracts for the sale of certain real estate located near Oklahoma City. The parties occupy the same position here that they did in the trial court, and we shall refer to them accordingly. The trial court sustained a demurrer to the plaintiffs' evidence and rendered judgment against them dismissing the action at their cost, from which they have appealed.

On July 22, 1910, the parties hereto entered into a written contract by the terms of which the defendants sold to plaintiffs 40 acres of land near Oklahoma City for $25,000, payable as follows: $6,500 cash; $3,500 August 7, 1910; $10,000 September 7, 1911; and $5,000 March 7, 1912, said deferred payments to bear interest at 8 per cent. from July 7, 1910; and plaintiffs to have possession of said land from August 7, 1910, provided the deferred payment maturing at that time was paid. This payment was not made, and on September 15, 1910, said parties entered into a second contract with reference to said land, in which the original contract of July 22, 1910, was referred to and made a part thereof, providing, however, that the terms and provisions of the said contract inconsistent with this contract were to be held for naught. The main object of this contract was to extend the deferred payments of the original contract, and with reference to this matter it is provided: Said deferred payments of $18,500 are agreed to be due and payable in the following manner: $1,500 March 1, 1911; $7,000 March 1, 1912; $10,000 September 15, 1912. Time is made the essence of this contract.

On February 27, 1911, said parties entered into a third contract with reference to said land, providing for

the platting of the same, and reciting that $8,000 of the original purchase price had been paid. That portion of the third contract necessary to be considered is as follows:

"Whereas, said parties of the second part are desirous of having said property platted into lots, blocks, streets and alleys, and the streets and alleys dedicated to the public, and have requested said parties of the first part to plat said property and dedicate the streets and alleys thereon shown as herein mentioned; and

"Whereas, said parties of the first part have consented to plat said property, and dedicate the streets and alleys as requested by said second parties, and at the request of said second parties have further agreed to convey said lots and blocks to said second parties on payment to parties of the first part of eighty per cent. (80) of the actual amount for which said lots and blocks so conveyed may be sold, together with one dollar for cost of executing conveyances, the selling price of said lots to be furnished, together with the one dollar for cost of executing conveyances at the time request is made for deeds or conveyances: Provided, however, that the lots or block so sold shall not be released except on payment of a minimum amount, as shown on the schedule marked Exhibit A; that is, eighty per cent. of the price for which any lot is sold must equal the amount shown opposite said lot or block on said schedule, and the amount so received by said parties of the first part shall be credited on the next payment falling due under the contract dated the 22d day of July, 1910:

"Now, therefore, said parties of the first part hereby agree to execute the plat prepared and furnished by said second parties, and further agree to dedicate the streets and alleys thereon shown, to the public, and further agree to execute and deliver to said second parties, deeds for any lot, lots or blocks, in said plat, on receipt of the sum of eighty per cent. of the actual selling price

of said lots, together with one dollar for executing said conveyances; and the payments so received shall be credited on the next payment falling due under the contract of July 22, 1910, between the parties hereto.

"It is further understood that said parties of the second part are to furnish said parties of the first part a statement showing the exact price at which any lot, lots or block in said plat, except on receipt of the amount it is further understood and agreed that said parties of the first part shall not be required to release any lot, lots or block in said plat, except on receipt of the amount shown opposite said lot or block, on the schedule marked Exhibit A, it being understood that no lot or block shall be sold except it bring sufficient that eighty per cent. of said selling price shall equal the amount placed after said lot or block on said schedule.

"It is further understood and agreed that this contract shall in no manner affect the contract executed on July 22, 1910, and that said contract of July 22, 1910, shall be and is, continued in force the same as though this agreement had never been made."

On October 7, 1911, said parties entered into a fourth contract with reference to said land, by the terms of which the defendants sold to the plaintiffs the south half, or 20 acres of said land, for $12,500, payable as follows: $8,000 cash; $1,000 October 7, 1912; $3,500 October 7, 1913. Said deferred payments to bear interest at 8 per cent. from date. This contract, omitting the caption, the description of the 20 acres, and the signatures and acknowledgments of the parties, is as follows:

"Witnesseth, that the parties of the first part hereby agree to sell and convey by a good and sufficient warranty deed, clear of any and all incumbrances and the second parties hereby agree to purchase premises as hereinafter set forth, upon the following terms and conditions, said premises being located as follows: * * *

Said first parties agree to convey said premises to second parties as aforesaid, upon the following terms, and in consideration of which second parties agree to pay the sum of $12,500; $8,000 of which is to be paid upon the execution of this contract and the balance of $4,500 to be paid as follows, to wit, $1,000 to be due and payable on or before one year after the date of this instrument with interest thereon from date at the rate of 8 per cent. per annum, payable semiannually until paid, and $3,500 due and payable on or before two years after date with interest thereon from date at the rate of 8 per cent. per annum, payable semiannually, until paid. If either or both of said payments be made before the date of maturity, such interest to cease at the time of payment. It is agreed and understood that parties of the second part are to have possession of said described premises and use thereof after the date of this instrument, and to retain possession thereof, providing said second parties meet the terms of this agreement. Second parties are to suffer no waste nor permit any waste on said premises during the term of this contract. Second parties agree to pay all taxes on said premises and any back taxes, if any, accruing since the year of 1909.

"First parties agree, on the performance of this contract by second parties, to furnish an abstract of title showing good title in said first parties. In case of said second parties' failure to perform any of the terms, or payments, as set forth in this contract, then this contract is to become null and void at the option of first parties. It is understood and agreed that all contracts previously made covering on the north one-half of the N. E. 1/4 of the S. E. 1/4 of section 23, township 12, range 3 W., in Oklahoma county, Oklahoma, are hereby released, null and void and of no effect; and all contracts previously made concerning the premises herein described in conflict with the terms of this agreement are hereby declared of no effect."

After the execution of the contract of February 27, 1911, the third contract, said 40 acres was platted as an addition to Oklahoma City, pursuant to the terms of said contract, and the plaintiffs contracted with some real estate agents for the sale of said addition. No sales had been consummated at the time of the execution of the contract of October 7, 1911, the last contract, but in March following, two lots in the addition were sold and the plaintiffs tendered to the defendants 80 per cent. of the purchase price thereof, plus $1, and demanded a deed for said lots under the terms of the contract of February 27, 1911. The defendants refused to execute the deed, claiming that the contract of February 27, 1911, was abrogated by the last contract. Following this, the plaintiffs brought this action to recover damages as before stated.

The trial court, on a demurrer to the evidence, reached the conclusion that the last contract was clear and unambiguous, complete in itself; that the terms and provisions of the previous contract, in so far as they relate to the 20 acres involved in the last contract, were inconsistent with its terms and provisions; that the plaintiffs had not complied with the terms of the last contract; that the defendants had not breached the same, and therefore rendered judgment against the plaintiffs dismissing the action at their cost.

The only question presented for our determination is the proper construction of these various contracts. They relate, in whole or in part, to the same subject-matter, and should therefore be considered and construed together. Section 952, Rev. Laws 1910; *Canadian Coal Co. v. Lynch*, 28 Okla. 585, 115 Pac. 466.

The cardinal rule that should guide us in the interpretation of these contracts is to ascertain the intention of the parties thereto as expressed therein, and give effect to the same if it can be done consistently with legal principles. Section 946, Rev. Laws 1910; *Kee v. Satterfield*, 46 Okla. 660, 149 Pac. 243; 2 Ruling Case Law, sec. 225.

In arriving at the intention of the parties to a contract, the language used therein, if it is clear and explicit and does not involve an absurdity, governs its interpretation. Sections 948 and 949, Rev. Laws 1910. The whole instrument should be read together, and, if possible, every part thereof should be made effective, giving to the words and terms thereof their ordinary and accepted use and meaning. Sections 949 and 951, Rev. Laws 1910; *City of Tecumseh v. Burns et al.*, 30 Okla. 503, 120 Pac. 270; *Kansas City Bridge Co. v. Lindsay Bridge Co.*, 32 Okla. 31, 121 Pac. 639; *Lamont Gas & Oil Co. v. Doop & Frater*, 39 Okla. 427, 135 Pac. 392; 2 Ruling Case Law, secs. 225 to 227, inclusive.

With these rules and principles in mind, we have carefully examined and considered the various contracts and have reached the conclusion that the last contract providing for the sale of 20 acres of said land is clear, explicit, and unambiguous, and that the terms and provisions of the previous contracts relating to the deferred payments, the amount and the manner of paying the same, are wholly inconsistent with the terms and provisions of the last contract. The last contract describes the 20 acres, states the purchase price, the cash payment, and fixes the amount of the deferred payments and the manner of their payment, and the provisions of the pre-

vious contracts with reference to these matters are wholly inconsistent with the terms and provisions of the last contract.

A written contract may be discharged, rescinded, altered, or changed at any time before the performance is due by a new agreement in writing. Section 988, Rev. Laws 1910; *Mullen v. Thaxton,* 24 Okla. 643, 104 Pac. 359; *Smith-Wogan Hdw. & Imp. Co. v. Jos. W. Moon Buggy Co.,* 26 Okla. 161, 108 Pac. 1103. This last contract abrogated the provisions of the previous contracts with reference to the 20 acres, the purchase price, the cash payment, and the amount and manner of paying the deferred payments.

The last contract being clear, explicit, and unambiguous, it was the duty of the court to construe and determine the legal effect thereof. *Rider v. Morgan,* 31 Okla. 98, 119 Pac. 958. We think the construction placed upon these contracts by the trial court was correct.

The judgment should therefore be affirmed.

By the Court: It is so ordered.