COBB BANK & TRUST COMPANY, Plaintiff,

v.

AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Defendant and Third-Party Plaintiff,

v.

OMNIBUS GROUP, INC., Third-Party Defendant.

Civ. A. No. 77–296 A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Oct. 25, 1978.

Jerry L. Berthold, Richard A. Gordon, Berthold & Gordon, P. C., Smyrna, Ga., for plaintiff.

John Hinchey, Albert E. Phillips, Terrance C. Sullivan, Phillips, Hart & Mozley, Atlanta, Ga., for defendant.

RICHARD C. FREEMAN, District Judge.

### FINDINGS OF FACT

**1.**

On or about January 3, 1975, Omnibus Group, Inc.[1] [hereinafter "Omnibus"] as principal and defendant American Manufacturers Mutual Insurance Company [hereinafter "Surety"] as surety in consideration of the payment of a premium of $1,200.00 by Omnibus to Surety executed a financial guaranty bond undertaking to guarantee repayment of a loan from Hamilton Mortgage Company to Omnibus in the amount of $60,000.00.

**2.**

Hamilton Mortgage Company never made the $60,000.00 loan to Omnibus and the related financial guaranty bond was returned to the Surety.

**3.**

On or about April 11, 1975, Omnibus and the Surety upon no additional premium executed a second financial guaranty bond undertaking to guarantee repayment of a loan from Gulf Union Corporation of Baton Rouge, Louisiana to Omnibus in the amount of $60,000.00.

**4.**

The Gulf Union Corporation never made the $60,000.00 loan to Omnibus and the related financial guaranty bond was returned to the Surety.

---

1. The plaintiff and defendant reported at trial that the Omnibus Group, which had filed a petition in bankruptcy, had not been served with the third-party complaint and was no longer a party to the instant action.

**5.**

On or about June 4, 1975, Omnibus and the Surety, upon no additional premium, executed a third financial guaranty undertaking to guarantee repayment of a loan from Getty-Grafton Interest and/or Assigns, Houston, Texas, to Omnibus in the amount of $60,000.00 [hereinafter the "Bond"].

**6.**

The Bond recited the execution of a promissory note [hereinafter the "Note"] dated June 4, 1975, in the principal amount of $60,000.00, with Omnibus as the Maker and Getty-Grafton Interest as the Payee. The Bond, by its terms, incorporated the Getty-Grafton Note.

**7.**

The Bond provided that upon Omnibus' default Getty-Grafton could demand payment by Surety of any unpaid balance and accrued interest not to exceed $60,000.00.

**8.**

The Bond further provided that "if the principal [Omnibus] shall well and truly pay, or cause to be paid all sums due under the above-mentioned Note, then this obligation is void, otherwise to remain in full force and effect until the 3rd day of January, 1976."

**9.**

At all times relevant, Omnibus was represented by Attorney Harold J. Bowman, Jr.

**10.**

Shortly after June 4, 1975, Mr. Bowman carried the Bond, together with the Note in the amount of $60,000.00 payable to Getty-Grafton Interest, to Houston, Texas, to meet with Mr. Donald H. Getty of Getty-Grafton Interest and to attempt to find a local lender to fund the loan.

**11.**

Mr. Bowman left the Bond and the Getty-Grafton Note with Mr. Getty, but Getty-Grafton Interest was unable to find a willing lender in Houston.

**12.**

Getty-Grafton Interest never loaned the $60,000.00 referred to in the Getty-Grafton Note. On or about August 8, 1975, Getty-Grafton Interest executed, at Mr. Bowman's request, a "Special Power of Attorney," appointing Mr. Bowman its attorney-in-fact with power to assign the purported Getty-Grafton Note and the Bond. This power of attorney provided that it became effective on August 19, 1975, and terminated on August 29, 1975.

**13.**

Again, on or about October 29, 1975, Getty-Grafton Interest executed, at Mr. Bowman's request, another "Special Power of Attorney," appointing Mr. Bowman its attorney-in-fact to assign its interest, if any, in the Getty-Grafton Note and the Bond; this power of attorney provided that it would be effective from October 29, 1975 through November 17, 1975.

**14.**

In connection with the procuring of the "Special Power of Attorney" documents, Getty-Grafton Interest returned the Bond and the Getty-Grafton Note to Mr. Bowman.

**15.**

Toward the end of October or first of November, 1975, Mr. Bowman and Mr. Harry W. Farmer, then president of Omnibus, were introduced to Mr. V. Fred Aiken, vice-president of the plaintiff, Cobb Bank & Trust Company.

**16.**

Mr. Aiken's background included a law degree, graduation from the School of Banking of the South, and other related studies, but no college degree.

**17.**

Mr. Bowman and Mr. Farmer approached the Cobb Bank through Mr. Aiken requesting that the bank loan Omnibus $60,000.00 and proposing that Mr. Bowman, using his power of attorney previously received from Getty-Grafton Interest, execute an assignment to the bank of the Getty-Grafton Note and the Bond to serve as collateral for a new promissory note to be given to the bank by Omnibus, the new note to mature at the same time as the Getty-Grafton Note would have matured had it ever been funded.

**18.**

Mr. Aiken noted that the Bond shown to him by the representatives of Omnibus appeared to have been executed by Mr. W. A. Haynes for the Surety. Mr. Aiken called the Surety's home office for the primary purpose of determining that Mr. Haynes was, in fact, employed by the Surety and that Mr. Haynes was authorized to write such a bond.

**19.**

The home office representative of the Surety told Mr. Aiken that Mr. Haynes was in fact employed by the Surety and was authorized to write the bond.

**20.**

Mr. Aiken then telephoned Mr. Haynes in the Surety's Atlanta office. Mr. Haynes told Mr. Aiken that the signature on the Bond was his and that the Bond which he had executed on or about June 4, 1975, was a "valid" bond.

**21.**

It appears that Mr. Haynes was somewhat confused at the time he received the call from Mr. Aiken. For example, on November 10, 1975, Mr. Haynes wrote to Mr. Aiken, "In reference to our telephone conversation, please be advised that this is a valid Bond made to the Obligee of Getty-Grafton interests to cover a note payable to the principal Omnibus Group, Inc." In fact, the Bond by its terms does not run "to the Obligee of Getty-Grafton;" rather Getty-Grafton *is* the obligee. Also, the Bond by its terms, does not "cover a note payable to the principal Omnibus Group, Inc.;" rather Omnibus is the maker and the note by its terms is payable to Getty-Grafton Interest.

**22.**

Before taking a new note from Omnibus and advancing $60,000.00, Mr. Aiken consulted with one of the bank's attorneys, Mr. Jerry L. Berthold, who advised that the Special Power of Attorney, the Note, the Bond, and their proposed assignment were proper in form and substance.

**23.**

On or about November 10, 1975, Omnibus executed a new promissory note in favor of the Cobb Bank in the amount of $60,000.00, payable on the same maturity date, then only 38 days away, and at the same rate of interest. At the same time, Mr. Bowman endorsed the Getty-Grafton Note on behalf of Getty-Grafton Interest to the Cobb Bank and executed a document entitled "Assignment of Financial Guaranty Bond" on behalf of Getty-Grafton Interest in favor of the Cobb Bank thereby purporting to assign the Getty-Grafton Note and the Bond to the bank.

**24.**

Also on or about November 10, 1975, the Cobb Bank procured an "Owners Consent to Pledge of Collateral," executed by Mr. Bowman as attorney-in-fact of Getty-Grafton Interest, consenting to the assignment of the Getty-Grafton Note and the Bond as collateral to secure the indebtedness of Omnibus to the bank. At or about the same time, Mr. Farmer of Omnibus executed a "Security Agreement," pledging the Bond and the Getty-Grafton Note to the bank as collateral for the new note.

**25.**

The Cobb Bank advanced $60,000.00 to Omnibus on or about November 10, 1975, pursuant to the terms of the new note executed by Omnibus in favor of the bank.

**26.**

The bank gave Getty-Grafton Interest nothing of value for the Getty-Grafton Note or the Bond.

**27.**

Getty-Grafton Interest never gave anything of value to Omnibus or anyone else for the Getty-Grafton Note.

**28.**

On or about November 11, 1975, the Cobb Bank corresponded with Omnibus Group, Inc. confirming that it held the Note by assignment, and that payment thereof should be made directly to the bank; and also corresponded with Surety confirming the assignment of the Bond and the Note.

**29.**

On November 14, 1975, Surety corresponded with the Cobb Bank acknowledging the bank's letter of November 11, 1975 but declining comment on the purported assignment. On November 22, 1975, the bank corresponded with Surety enclosing copies of the documents deemed relevant to the assignment.

**30.**

The entire record reveals that the Cobb Bank either knew or should have known that the Getty-Grafton Note had been executed and delivered without consideration.

**31.**

The Surety did not intentionally make false representations to, or conceal material facts from, the Cobb Bank.

**32.**

The Cobb Bank had equal or better access than the Surety to all material facts involved. The Surety never sought to influence the conduct of the Cobb Bank, but merely responded to inquiries initiated by the bank.

**33.**

The Cobb Bank's actions were taken upon the representations made to it by Omnibus and its attorney, advice given by its own counsel, and the bank's own judgment as to the legal effect of the transaction at hand.

**34.**

Omnibus Group, Inc. did not make any payment to the bank when due, and on December 22, 1975, the Cobb Bank corresponded with Omnibus demanding payment in full within ten days. A copy of this correspondence was sent to Surety and Mr. Haynes.

**35.**

No payment was received by the bank within the period of ten days and on December 31, 1975, the Cobb Bank corresponded with Surety claiming against the subject bond and again enclosing copies of the purported assignments.

**36.**

On April 12, 1976, Surety corresponded with the Cobb Bank and denied any liability to the bank under the Getty-Grafton Bond.

**37.**

Between January 12, 1976 and September 27, 1976, Omnibus made payments to the bank of accrued interest and principal reduction of $10,801.42, leaving a principal balance due of $49,198.58.

**38.**

There have been no additional payments of accrued interest, principal reduction or otherwise made to the Cobb Bank by Omnibus, Mr. Harry Farmer, or Surety. As of the date of trial, a total of $58,445.22 was owed, representing $49,198.58 in unpaid principal and $9,246.64 in accrued interest.

## CONCLUSIONS OF LAW

**39.**

This court has personal jurisdiction over the plaintiff, Cobb Bank, and defendant

Surety, and has jurisdiction over the subject matter of this diversity action pursuant to 28 U.S.C. § 1332.

**40.**

Since Getty-Grafton Interest failed to fund the Note, or, because nothing of value was given for the Note, Getty-Grafton could not have demanded payment on the Note.

**41.**

Because Omnibus was not obligated under the purported promissory note to Getty-Grafton, there could be no default within the terms of the Bond and Getty-Grafton could not have made a demand against the Surety on the Bond.

**42.**

■■ There could be no enforceable assignment of the Bond from Getty-Grafton to the Cobb Bank because Getty-Grafton had nothing to assign. Under basic contract law, an assignee can take no more than the assignor has to assign. Consequently, the Cobb Bank by the purported assignment could take no greater interest in the Bond than Getty-Grafton had, which is to say, nothing.

**43.**

■ The Getty-Grafton Bond is not a negotiable instrument within the definition of the Uniform Commercial Code. Negotiability under Article III of the U.C.C., as adopted by the Georgia legislature, requires that a writing:

  (a) be signed by the maker or drawer; and

  (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

  (c) be payable on demand or at a definite time; and

  (d) be payable to order or to bearer. Ga.Code § 109A–3–104(1).

**44.**

■ On its face [2] the Getty-Grafton Bond is not payable in a sum certain but payable in some indeterminate balance left unpaid by the principal. The Cobb Bank admits in this instance that a portion of the original sum has been repaid by the principal, Omnibus. Negotiability demands that an instrument bear a definite sum in order that subsequent holders can take and transfer the instrument without plumbing the intricacies of individual relationships or payback schemes. An instrument would not be the functional equivalent of currency if such investigations were necessary.

**45.**

■ Further, the Getty-Grafton Bond is not expressly "payable to order or to bearer." Ga.Code § 109A–3–104(1)(d).

More than any other symbols, the words "order" and "bearer" are supposed to put a party on notice that he is dealing with a negotiable instrument. For this reason, courts under the Code have been slow to recognize substitutes for these symbols. Although the Comments suggest certain words that may be the equivalent of order or bearer, they also indicate the draftsmen's intent to restrict courts' power to sanction substitutes.

J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 14–4 at 464 (1972). A document lacking these "words of negotiability" may not be considered a negotiable instrument in determinations of transfer rights and holder status. *Hall v. Westmoreland, Hall & Bryan*, 123 Ga.App. 809, 182 S.E.2d 539 (1971). The Getty-Grafton Bond may not be viewed as "coin of the realm" in the form of a negotiable instrument, as the Cobb Bank argues; but rather, remains as a contract with an unfulfilled condition precedent, the funding

---

**2.** The Getty-Grafton Bond also carries an implied condition that the underlying note must first be funded. Such contingency would also defeat negotiability under Ga.Code § 109A–3–104(1)(b).

by Getty-Grafton Interest of the underlying loan.

**46.**

Because the Getty-Grafton Bond is not a negotiable instrument, Ga.Code § 109A-3-104(1), the hoary case of *Davis v. The Atlanta National Bank*, 66 Ga. 651 (1881), is plainly distinguishable. In *Davis* the three notes in dispute were payable in the face of amounts of $100, $100, and $50, plus interest, and were payable in express terms to "John Neal or bearer . . . ." The negotiability failures of the instant bond, the lack of a sum certain and the absence of the symbols of negotiability, were decidedly present in *Davis*.

**47.**

■ The Cobb Bank may not enforce the Getty-Grafton Bond against the Surety pursuant to the doctrine of equitable estoppel. Estoppels are not favored by the law and for an equitable estoppel to arise some intended deception in the conduct or declarations of the party to be estopped must be shown. *Cobb County Rural Electric Membership Corp. v. Board of Lights and Waterworks of Marietta*, 211 Ga. 535, 539-40, 87 S.E.2d 80 (1955); *Dulock v. Shiver*, 239 Ga. 604, 606, 238 S.E.2d 397 (1977).

> In equitable estoppel there must concur, "first, a false representation or concealment of facts; second, it must be within the knowledge of the party making the one or concealing the other; third, the person affected thereby must be ignorant of the truth; fourth, the person seeking to influence the conduct of the other must act intentionally for that purpose; and fifth, persons complaining shall have been induced to act by reason of such conduct of the other."

*Cobb County Rural Electric Membership Corp. v. Board of Lights and Waterworks of Marietta*, 211 Ga. at 539-40, 87 S.E.2d at 83, quoting, *Tinsley v. Rice*, 105 Ga. 285, 290, 31 S.E. 174 (1898).

**48.**

■ In applying these principles to the action *sub judice*, it is apparent that any representations made by or on behalf of the Surety to the Cobb Bank were not as to "facts;" but were, if anything, statements of legal conclusions. The Cobb Bank was not ignorant of the truth as to the enforceability of the Bond, because it had equal knowledge or access to the same "facts" upon which its actions were taken and it relied upon the advice of its counsel as to the legal effect of these facts. Further, no evidence that the Surety or its agents acted intentionally to mislead or deceive the bank was adduced; instead, the evidence revealed that the representations of Mr. Haynes in his letter of November 10, 1973, to the bank were the product of confusion, rather than intended deception. Finally, the evidence showed that the Cobb Bank's agreement to accept assignment of the Bond was reached independent of and without reliance upon the representations made by the Surety. The necessary elements of equitable estoppel have therefore not been demonstrated in plaintiff's proof.

**49.**

■ Although a party may waive a defense by estoppel, it may not create a cause of action by estoppel. *Southern Railway Co. v. A. O. Smith Corp.*, 134 Ga.App. 219, 222, 213 S.E.2d 903 (1975); *Davis v. Johnson*, 92 Ga.App. 858, 864, 90 S.E.2d 426 (1955). For example, the terms of coverage of an insurance policy may not be extended by the doctrine of estoppel or waiver. *Ballinger v. Citizens and Southern Bank of Tucker*, 139 Ga.App. 686, 689, 229 S.E.2d 498 (1976); *Allstate Insurance Co. v. Walker*, 114 Ga.App. 732, 733, 152 S.E.2d 895 (1966). In this action, the Cobb Bank is attempting to use certain statements of the Surety by the doctrine of equitable estoppel to change or broaden the terms of the Bond which covered only the Getty-Grafton Note and have it apply to the new promissory note issued by Omnibus to the bank on November 10, 1975. Plaintiff's attempt is unavailing under the settled law of Georgia.

**50.**

Upon a review of the facts and applicable law, the court concludes that the plaintiff,

Cobb Bank and Trust Company, has failed to prove a claim entitling it to recover against defendant American Manufacturers Mutual Insurance Company, on the Bond in question.

Accordingly, judgment in this action is ORDERED entered in favor of the defendant, American Manufacturers Mutual, and against the plaintiff, the Cobb Bank.

IT IS SO ORDERED.