**COBB BANK & TRUST COMPANY, Plaintiff-Appellant,**

v.

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, Defendant and Third-Party Plaintiff-Appellee,**

**Omnibus Group, Inc., Third-Party Defendant.**

No. 78–3765.

United States Court of Appeals, Fifth Circuit.

Aug. 22, 1980.

J. Eric Dahlgren, Alfred S. Lurey, Atlanta, Ga., for plaintiff-appellant.

Phillips, Hart & Mozley, John W. Hinchey, Atlanta, Ga., for defendant and third-party plaintiff-appellee.

Before COLEMAN, Chief Judge, RONEY and GARZA, Circuit Judges.

PER CURIAM:

American Manufacturer's Mutual Insurance Company, as surety, issued a guarantee bond for a note from Omnibus Group, Inc. to Getty-Grafton and/or assigns. Getty-Grafton failed to fund the note and assigned the bond to Cobb Bank and Trust, who used it to guarantee a new note from Omnibus to Cobb. Cobb sued the surety on the guarantee when Omnibus failed to repay the loan, and the surety denied liability. The Court below found the Cobb note was not guaranteed by the Getty-Grafton bond and on this basis found the surety not liable on the Cobb note. Cobb Bank and Trust Company appeals, and we affirm.

Omnibus Group, Inc. [hereafter "Omnibus"] needed $60,000, but did not have the credit to get a loan on its own. For $1200 it obtained a guarantee of repayment and a guarantee bond from a surety, American Manufacturer's Mutual Insurance Company [hereafter "Surety"]. On January 3, 1975, Surety issued a guarantee bond to Hamilton Mortgage Company to induce it to lend Omnibus $60,000. Hamilton did not make the loan and returned the bond to Surety. On April 11, 1975, Surety reissued the bond, this time to Gulf Union Corporation. Gulf Union Corporation was unable to lend Omnibus the money, and it also returned the bond to Surety. On June 4, 1975, Omnibus found another prospective source of money, Getty-Grafton Interests. In this case Surety did not issue a bond identical to that it had issued twice previously. Rather than issuing it solely in the name of the potential source of money, it issued it to "Getty-Grafton Interests and/or assigns."

Harold J. Bowman, Jr., attorney for Omnibus, stated at trial that the purpose for adding the "and/or assigns" was to prevent having to reissue the bond. He stated that he had informed Surety that Getty-Grafton was not a bank but a loan broker. He testified that Surety was well aware that some party other than Getty-Grafton would provide the money for the loan. The note was for 196 days and was due December 18, 1975.

Getty-Grafton was unable to find a lender for Omnibus in Houston. After failing it lost interest in the matter, but it did not return the bond to Surety as had the two previous unsuccessful or unwilling prospective lenders.

Omnibus kept looking for money, and in November 1975 found a lender, Cobb Bank and Trust [hereafter "Cobb"]. Cobb wanted as good a guarantee as Hamilton Mortgage Co., Gulf Union Corp., and Getty-Grafton had received, so it made inquiries to determine whether (1) the bond tendered by Omnibus was issued by Surety and whether the signature of W. A. Haynes was authorized and (2) whether Surety would issue the bond in Cobb's name as it had for the three previous potential lenders.

Cobb was reassured that W. A. Haynes was authorized to issue the bond. Its communications with Haynes resulted in confusion on both sides. When Cobb made its initial inquiries, Surety did not understand that Getty-Grafton had not funded the June 4 note. In response to a telephone inquiry from Cobb, Haynes stated that the June 4, 1975, bond was "valid." On November 10, 1975, Haynes wrote V. Fred Aiken, Vice-President of Cobb, that the bond was ". . . made to the obligee of Getty-Grafton Interests to cover a note payable to the principal Omnibus Group, Inc." In fact Haynes had reversed the relationships of the parties. The note was payable *to* Getty-Grafton Interests, the obligee of the note, and Omnibus was the *maker*.

Surety refused to redraft the bond to put it specifically in Cobb's name. Surety claims that it had developed doubts about Omnibus because of its three futile attempts to find a lender. Cobb contends that Surety was content to have the bond guarantee a loan by it to Omnibus and that Surety's only reason for refusing to reissue the bond was that it believed such assignment was unnecessary because the Getty-Grafton bond could be assigned to Cobb. Surety disputes this. Cobb admits it did not rely entirely upon Surety's legal judgment on this point. It posed this question to its own attorney, Jerry L. Berthold, who agreed that the bond could be assigned.

Omnibus had contemplated using an assigned bond prior to the contacts between Cobb and Surety. On two occasions, in August 1975 and November 1975, Bowman, who was the attorney for Omnibus, had the obligee of this note, Getty-Grafton, give him a special power of attorney so that he could assign the Getty-Grafton bond to the new lender.[1] He found no lender in August, but in November 1975 he successfully completed the loan agreement with Cobb.

On November 10, 1975, Omnibus executed a new promissory note for $60,000 to Cobb. Bowman, purporting to represent Getty-Grafton in this transaction with his employer, Omnibus, assigned the guarantee bond Surety had given for the Getty-Grafton note along with the unfunded Getty-Grafton note to guarantee the Cobb note. The parties in this transaction did what they could to make the new note conform to the terms of the old guarantee bond. Because the old bond had only 38 of its original 196 days term left, the Cobb note was made due December 18, 1975, and the amount of interest to be paid was reduced from 10% for 196 days to 10% for 38 days, or $633.00. Getty-Grafton had paid nothing for the June 4, 1975 guarantee bond and it received nothing for it from Cobb when it assigned it.

On November 11, 1975 Cobb wrote Surety informing it of the assignment of the Getty-Grafton bond. It did not inform Surety that Getty-Grafton had *not* funded the June 4, 1975 note. Surety says it believed Getty-Grafton had funded the note until after Cobb made its demand for payment.

Omnibus failed to make its payments on the Cobb note, and on December 22, 1975, Cobb demanded full payment from Surety under the guarantee bond. Surety investigated the claim and denied liability on the Cobb note.

Cobb brought a diversity action in federal court. It claims the case of *Davis v. Atlan-*

---

1. We do not find this procedure fraudulent. It does appear a little odd that the prospective lender appointed the attorney for the prospective borrower as its "attorney-in-fact" for the purpose of assigning the guarantee bond issued to the lender. The record does not explain why Getty-Grafton itself could not have assigned the note without going through such convoluted procedures.

*ta National Bank*, 66 Ga. 651 (1881) requires a verdict for Cobb. The lower court distinguished *Davis* on the basis that it concerns a negotiable instrument, which it found the Getty-Grafton bond was not. It stated that since Getty-Grafton had not funded the June 4 note it had no enforceable rights which it could have assigned to Cobb. Therefore, Cobb got no rights through the November 10, 1975 assignment of the Getty-Grafton bond. On this basis the Court found Surety not liable on Omnibus' November 10, 1975 note to Cobb. Cobb appeals, contending the lower court erred in its interpretation of *Davis v. Atlanta National Bank, supra*, which it contends compels a reversal in this case and a decision for Cobb.

Cobb's appeal rests almost entirely on its interpretation of the 100 year old case, *Davis v. Atlanta National Bank, supra*. Cobb argues strenuously that this case and *Davis* are exactly on point and that the legal principles set out by the Georgia Supreme Court in *Davis* are more applicable here than in *Davis*.

In *Davis*, A. B. Davis and C. C. Davis created three notes, two for $100 and one for $50, for the benefit of L. H. Davis. A. B. and C. C. intended to act as sureties for L. H. Davis in his attempt to borrow from John Neal. The note read as follows:

$100.00. Six months after date we or either of us promise to pay *John Neal or bearer* one hundred dollars, to bear two per cent per month until paid. Value received this February 15th 1875.

    [Signed]   L. H. Davis
                A. B. Davis, Sec'ty.
                C. C. Davis

66 Ga. at 652 [emphasis added].

Despite this agreement with the other Davises, L. H. Davis did not borrow the money from John Neal. Instead he borrowed from the Atlanta National Bank, who accepted the notes as collateral security. When L.H. Davis defaulted on the notes, C. C. and A. B. Davis refused to pay the loan, saying that the notes were invalid because L. H. failed to get the loan from John Neal. The jury found for the Bank, and the Georgia Supreme Court affirmed. The Court emphasized that the notes were made payable to "Neal or Bearer." Although the Davises may have agreed among themselves that the loan would come from Neal, the plain language of the notes allowed the loan to come from any "bearer" of the surety agreement. The note was made payable in the alternative to *John Neal or bearer*, and as a bona fide bearer the Bank was entitled to payment.

■ The *Davis* case is distinguishable from the factual circumstances of the instant case in two ways. The first is the negotiability of the notes. The *Davis* note is clearly a negotiable instrument, payable either to Neal or bearer. According to the requirements of U.C.C. Article 3–104(1),[2] it is signed by the maker, contains an unconditional promise to pay a sum certain, and is payable at a definite time to the bearer. The Getty-Grafton bond, on the other hand, is not a negotiable instrument. It is not payable to "order or bearer." The amount to be paid varies according to the date that the loan is made.

Even if the Getty-Grafton bond was a negotiable instrument it is distinguishable from *Davis* because of the words of assignment used. The *Davis* language facilitated such assignment by making it payable to "John Neal or Bearer." The language used in the Getty-Grafton bond is considerably more restrictive, making the Getty-Grafton bond payable only to "Getty-Grafton Interests and/or *assigns*." (Emphasis added.) Because of this the *Davis* rationale, which emphasized that the Atlanta National Bank

---

**2.** Adopted by the Georgia legislature as Ga. Code Ann. § 109A–3–104–(1). It states that in order to be a negotiable instrument a writing must:

  (a) be signed by the maker or drawer; and
  (b) contain an unconditional promise or order to pay a sum certain in money and no promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and
  (c) be payable on demand or at a definite time; and
  (d) be payable to order or to bearer.

was clearly a *bearer* within the meaning of the note, does not apply. Cobb's case must fail because of the failure of the attempted assignment, as will be explained *post.*

Even though the *Davis* case does not automatically mandate a decision for Cobb, we must look at the Getty-Grafton bond as a contract. Does the language of the bond cover the Cobb note? Does it appear that the parties intended the guarantee bond to be assigned, as it was? If either is true, are there any impediments which prevent our approving this attempted assignment?

Ga.Code Ann. § 103–103 provides that "The contract of suretyship is one of strict law, and the surety's liability will not be extended by implication or interpretation." We must give the surety contract here a strict construction, but we will attempt to enforce it to give effect to the clear intent of the parties, where we may permissibly do so. *American Casualty Co. of Reading, Penn. v. Irvin,* 426 F.2d 647, 650 (5th Cir. 1970).

It is clear that Surety thought the Getty-Grafton bond was assignable from the date it issued the bond. The only reason it had to change its designation of the obligee to add in the words "and/or assigns" was to facilitate such assignment. There is evidence in the record that Surety had reason to expect somebody other than Getty-Grafton to fund the note. Cobb contends that when it notified Surety that it was considering lending Omnibus $60,000 Surety told them it was possible to assign the bond. Surety denies this. If Surety expected its guarantee bond to be assigned, why shouldn't we enforce the assignment?

American Manufacturer's Mutual Insurance Company as surety can assert the defenses available to the principal. If Omnibus at a crucial point in the loan process was not liable on the note Surety would not be liable on its guarantee bond. *Peerless Casualty Co. v. Housing Authority of the City of Hazelhurst,* 228 F.2d 376, 379 (5th Cir. 1955), Ga.Code Ann. § 103–102.

Getty-Grafton took Omnibus' June 4, 1975 note and Surety's corresponding bond. It kept the bond but did not fund the note. Had Getty-Grafton attempted to enforce either the unfunded note or the guarantee bond against either Omnibus or Surety, it most assuredly would have failed. When Getty-Grafton assigned the guarantee bond to Cobb, it had no interest in it and no enforceable rights in it. Cobb obtained through the assignment only those rights which Getty-Grafton had at the time of the assignment—which were *none.* Ga. Code Ann. § 85–1803; *Healey v. Morgan,* 135 Ga.App. 915, 219 S.E.2d 628 (1975).

The record shows that Surety contemplated that the Getty-Grafton note and bond would be assigned, but it does not establish that Surety expected it to be assigned prior to being funded by Getty-Grafton. Even if both parties had intended the June 4 note to be assignable by Getty-Grafton prior to being funded by Getty-Grafton, such an assignment would have been invalid for the reasons just stated.

It necessarily follows that the decision of the lower court is

AFFIRMED.