SUNRIZON HOMES, INC., d/b/a Apple Homes, Appellant,

v.

AMERICAN GUARANTY INVESTMENT CORPORATION and Continental Federal Savings and Loan Association, Appellees.

No. 66684.

Supreme Court of Oklahoma.

Dec. 6, 1988.

Rehearing Denied June 27, 1989.

Opinion on Motion for Costs
Oct. 17, 1989.

Kent L. Jones, Orval E. Jones, Tulsa, for appellant.

Terry P. Malloy, Tulsa, for appellees.

KAUGER, Justice.

The four issues presented are: (1) Whether an instrument lacking the words "pay to order or to bearer" is a negotiable instrument conferring holder in due course status on a party taking the document by assignment; (2) Whether the assignment of an installment sales contract to American Guaranty and the subsequent assignment to Continental Federal were separate instruments thus enabling the first assignment to be rescinded without rescinding the entire transaction; (3) Whether estoppel may be a defense to a party relying on another's negligence in the absence of any evidence showing the relying party's exercise of due care; and (4) Whether the existence of conflicting evidence on the question of whether the remedy of partial recission was timely pursued rendered summary judgment inappropriate.

We find that: (1) Because an instrument lacking the words "pay to order or to bearer" is nonnegotiable, it does not confer holder in due course status on a party taking the document by assignment; (2) Because the assignment of the installment sales contract and the subsequent assignment were separate contracts, the first as-

signment could be rescinded without rescinding the entire transaction; (3) Whether the defense of estoppel is available is a question of fact which could not be determined by summary judgment; and (4) The trial court erred in entering summary judgment because the evidence was conflicting concerning whether the remedy had been pursued timely.

## FACTS

In October of 1984, the appellant, Apple Homes (Apple–Seller), sold a mobile home to Roland and Rebecca Renault (Buyers). The contract covering the sale was dated December 15, 1984, but the closing on the mobile home did not occur until January 15, 1985. At that time, the buyers executed the installment sales contract and a security agreement in favor of Apple. Thereafter, Apple assigned its contractual rights to American Guaranty Investment Corporation (American Guaranty).[1] American Guaranty took possession of the contract and of the manufacturer's certificate of origin. It issued Apple a check for $39,-154.17 dated January 14, 1985 which was not delivered until sometime later. On January 17, 1985, the appellee, Continental Federal Savings and Loan Association (Continental), purchased an assignment of American Guaranty's rights in the installment sales contract for $40,012.42. Continental notified the buyers that their loan payments were to be made to Continental. It filed liens and security agreements to perfect its security interest in the collateral. On approximately February 12, 1985, American Guaranty's check was returned for insufficient funds.

After Apple's efforts to collect on American Guaranty's check were unsuccessful, it filed an action for recission of the assignment to American Guaranty praying for the restoration of all rights, and for redelivery of all documents. Apple also sought to recover all payments and documents received by Continental under the assignment of the installment sales contract from American Guaranty. Apple asserted that the sales contract was a nonnegotiable instrument, and that Continental had no greater rights than its assignor, American Guaranty. American Guaranty admitted liability and judgment was entered in favor of Apple. Apple and Continental each moved for summary judgment. The trial court granted summary judgment in favor of Continental. The Court of Appeals affirmed the trial court finding that Apple had attempted an impermissible partial recission of contract, indicating that had recission been an appropriate remedy, Apple was estopped to seek relief because of undue delay. After the Court of Appeals denied Apple's petition for rehearing, it petitioned for certiorari.

·

I

AN INSTRUMENT LACKING THE WORDS "PAY TO ORDER OR TO BEARER" IS NONNEGOTIABLE AND DOES NOT CONFER HOLDER IN DUE COURSE STATUS ON A PARTY TAKING THE DOCUMENT BY ASSIGNMENT.

The nature of the instrument, i.e., negotiable or nonnegotiable, is essential to determine what rights Continental received under its assignment from American Guaranty. If the contract for sale is a negotiable instrument, Continental may qualify as a holder in due course taking the assignment free of any claim or defense. If the contract for sale is not a negotiable document, Continental stands in the shoes of its assignor, American Guaranty, and the instrument is subject to the defense of failure of consideration—the bad check.[2] Continental asserts that it took the assignment for value, in good faith, without

---

**1.** Neither the Renaults nor American Guaranty are parties to this action. The Renaults have made timely payments under the installment contract. American Guaranty has admitted liability to Apple for the amount of the mobile home.

**2.** *Nat'l Bank v. ABC Constr. Co.*, 442 P.2d 269, 276–77 (Okla.1968); *Citizens' Bank v. Garnett*, 21 Okla. 200, 95 P. 755, 757 (1908). See also, *Sanco Finance Co. v. Canon*, 391 P.2d 817, 819 (Okla.1964).

knowledge of any claims or defenses, and that it qualifies as a holder in due course.[3]

Pursuant to 12A O.S.1981 § 3–302, before one may be a holder in due course, the holder must take an "instrument."[4] Instrument is defined by § 3–102(1)(e) as a *negotiable* instrument.[5] Section § 3–104 provides that a negotiable instrument must be signed by the maker or drawer, contain an unconditional promise to pay a sum certain in money, and be made payable to order or to bearer.[6]

It is undisputed that the sales contract meets the first two requirements of a negotiable instrument. It is signed by the maker or drawer, and it contains an unconditional promise to pay a sum certain in money. Nevertheless, Apple argues that because the contract does not contain the indispensable words of negotiability, "pay to order or to bearer," Continental is not a holder in due course. The installment sales contract states that the buyer promises "to pay to the Seller" monthly installments for a period of 15 years. Continental argues that this language meets the requirement that the instrument be payable to bearer under 12A O.S.1981 § 3–111 which defines an instrument as payable to bearer when it is payable to bearer or the order of bearer, a specified person or bearer, cash or order of cash, or any indication not purporting to designate a specific payee.[7]

The words—order and bearer—place a party on notice that the assignment is negotiable. The general rule in jurisdictions which have considered this question,[8] is that a note payable to a specific person, rather than to order or bearer is nonnegotiable.[9] *The sales contract fails to meet the criteria of § 3–104 that a negotiable instrument be made payable to order or bearer.* Continental is not a holder in due course of a negotiable instrument, and it is

**3.** Title 12A O.S.1981 § 3–302 provides in pertinent part:
"A holder in due course is a holder who takes the instrument
(a) for value; and
(b) in good faith; and
(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

**4.** Title 12A O.S.1981 § 3–305 provides:
"To the extent that a holder is a holder in due course he takes the instrument free from
(1) all claims to it on the part of any person; and
(2) all defenses of any party to the instrument with whom the holder has not dealt except
(a) infancy, to the extent that it is a defense to a simple contract; and
(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and
(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and
(d) discharge in insolvency proceedings; and
(e) any other discharge of which the holder has notice when he takes the instrument."

**5.** Title 12A O.S.1981 § 3–102 provides in pertinent part:
"(1) In this article unless the context otherwise requires ...
(e) 'Instrument' means a negotiable instrument."

**6.** Title 12A O.S.1981 § 3–104 provides in pertinent part:
"(1) A writing to be a negotiable instrument within this article must
(a) be signed by the maker or drawer; and
(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and
(c) be payable on demand or at a definite time; and
(d) be payable to order to bearer."

**7.** Title 12A O.S.1981 § 3–111 provides:
"An instrument is payable to bearer when by its terms it is payable to
(a) bearer or the order of bearer; or
(b) a specified person or bearer; or
(c) 'cash' or the order of 'cash', or any other indication which does not purport to designate a specific payee."

**8.** *Cobb Bank & Trust Co. v. American Mfrs. Mut. Ins. Co.*, 459 F.Supp. 328, 333 (N.D.Ga.1978), *aff'd*, 624 F.2d 722 (1980); *Spratt v. Security Bank*, 654 P.2d 130, 135 (Wyo.1982); *Spidell v. Jenkins*, 111 Idaho 857, 727 P.2d 1285, 1287 (Ct.App.1986); *Pascal v. Tardera*, 123 A.D.2d 752, 507 N.Y.S.2d 225 (1986); *Nation–Wide Check Corp. v. Banks*, 260 A.2d 367–68 (D.C.App. 1969); *Ralls–Tex Mill, Inc. v. Plains White Truck Co.*, 446 S.W.2d 917, 919 (Tex.Civ.App.1969).

**9.** The note in question merely requires payment "to Seller." The term Seller is defined in the contract as Apple Homes.

subject to the defense of failure of consideration.[10]

## II

THE ASSIGNMENT OF THE INSTALL-MENT SALES CONTRACT TO AMERICAN GUARANTY AND THE SUBSEQUENT ASSIGNMENT TO CONTINENTAL FEDERAL WERE SEPARATE INSTRUMENTS. THE FIRST ASSIGNMENT OF CONTRACT RIGHTS COULD BE RESCINDED WITHOUT RESCINDING THE UNDERLYING CONTRACT WITH THE BUYERS.

■ Because Continental can still assert that Apple attempted a partial recission of contract despite its lack of holder in due course status, we must consider the issue of partial recission. Apple seeks recission of the assignment of its rights and interest under the installment sales contract to American Guaranty. It does not seek to rescind its contract for sale with the buyers.[11] Continental argues that failure to request recission of the contract for sale, while praying for recission of the assignment, constitutes an impermissible attempt partially to rescind the contract. Generally, contracts are either valid or void in their entirety, and cannot be partially rescinded. However, separate documents executed as part of the same transaction may be read together as a single agreement.[12] A contract may be severable if the parties to a single contract intend performance under the contract to be divisible rather than entire.[13]

■ The cardinal rule in contract interpretation is to determine and to give effect to the contractual intent of the parties.[14] Subject to statutory exceptions, contracts are to be construed as written.[15] Continental argues that the contractual language requires a finding that the installment sales contract and the assignment were intended to be part of one indivisible contract. Because of the following contractual clause, Continental argues that the contract for sale and for the assignment are one indivisible agreement:

"Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."
See also, *Perry v. Cain*, 581 P.2d 891, 893 (Okla. 1978).

10. Despite the finding that the contract for sale is nonnegotiable, the transaction is governed by the UCC. Instruments which are not payable to order or to bearer but are transferable are included in the UCC pursuant to 12A O.S.1981 § 3–805. See, R. Alderman, *A Transactional Guide to the Uniform Commercial Code*, ch. 3, p. 541 (Am.Law Inst.1985).

11. Title 15 O.S.1981 § 233 provides the situations in which a party to a contract may seek recission:
"A party to a contract may rescind the same in the following cases only:
1. If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.
2. If through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part.
3. If such consideration becomes entirely void from any cause.
4. If such consideration, before it is rendered to him, fails in a material respect, from any cause; or,
5. By consent of all the other parties."

12. Title 15 O.S.1981 § 158 provides:

13. *Greater Oklahoma City Amusements, Inc. v. Moyer*, 477 P.2d 73, 76 (Okla.1970); *Waddell v. White*, 51 Ariz. 526, 78 P.2d 490, 496 (1938); *O'Malley Inv. & Realty Co. v. Trimble*, 5 Ariz. App. 10, 422 P.2d 740, 747 (1967).

14. Title 15 O.S.1981 § 152 provides:
"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."
Title 15 O.S.1981 § 154 provides:
"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."
See also, *Brown v. Coppadge*, 54 Okla. 88, 153 P. 817, 819 (1915).

15. Title 15 O.S.1981 § 155 provides:
"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article."
See also, *George v. Curtain*, 108 Okla. 281, 236 P. 876–77 (1925).

"Buyer ... agrees to purchase from Seller and Seller agrees to sell to Buyer, on the terms set out in this adjustable rate sale contract and security agreement, all of which shall be considered as *one document* evidencing the agreement of Buyer and Seller ..."

The quoted language does not refer to the assignment. Rather, it requires that the adjustable rate sale contract and the security agreement be considered as one contract setting forth the agreement between the consumers as buyers and Apple as the seller. The verbiage does not support Continental's argument that the *contract for sale and the assignment* should be considered as one agreement. Instead, ·the contract indicates the intent of the parties that the installment rate contract and the security agreement were to be considered as one indivisible transaction. Nothing in the language of the contract for sale precludes recission of the assignment on the basis that to do so would be partial recission of the underlying transaction.

Conversely the assignment contract, although physically a part of the same document containing the contract for sale, clearly indicates that it was intended to be a separate agreement. The assignment is set forth as a separate agreement between the seller and its assignee. The assignment refers to "the installment contract" and calls for the payment of consideration for the "above contract," recognizing that the contract between Apple and the buyers is a separate agreement. Although Continental argues that the two agreements are inseparable, the buyers are not mentioned as parties in this separate transaction between Apple and American Guaranty.[16] The contact for sale contains no language supportive of a finding that the two contracts—one for sale and one for the assignment of the right to receive payment—

should be treated as one indivisible transaction. Because the assignment contract reflects that rights under an independent agreement were transferred, a prayer for recission of the assignment is not a partial recission of the underlying transaction.

## III, IV

## SUMMARY JUDGMENT WAS INAPPROPRIATE

■ Continental argues that Apple is estopped to request recission of the assignment contract because of undue delay in seeking relief; or in the alternative because it was negligent in delivering not only the assignment contract but also the mobile home's manufacturer's certificate of origin to American Guaranty. The facts are disputed concerning who was in a better position to avoid the loss and when recission was sought. The issue of estoppel including the undue delay in seeking relief is a question of fact,[17] which in this case of disputed facts, could not be determined by summary judgment.

Even when the basic facts are undisputed, motions for summary judgment should be denied if under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts. Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In appraising the sufficiency of a petition, the accepted rule is that a petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the party to relief.[18] Because contradictory facts were in evidence the court

---

**16.** The assignment of contract rights results in the realignment of parties. See, Restatement (Second) of Contracts § 317(1) (1981) providing:

"An assignment of a right is a manifiestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in

whole or in part and the assignee acquires a right to such performance."

**17.** *Bay Petroleum Corp. v. May,* 264 P.2d 734, 736 (Okla.1953).

**18.** *Buckner v. General Motors Corp.,* 760 P.2d 803, 812 (Okla.1988); *Flanders v. Crane Co.,* 693 P.2d 602, 605 (Okla.1984).

erred in entering judgment on the estoppel question.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; TRIAL COURT REVERSED; CAUSE REMANDED.

DOOLIN, C.J., and HODGES, OPALA, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

LAVENDER, J., concurs in Part II, dissents from Part I.

HARGRAVE, V.C.J., and SIMMS, J., dissent.

## MEMORANDUM OPINION

## ON MOTION FOR COSTS

SUMMERS, Justice.

In an action arising out of the sale and financing of a mobile home Appellant Sunrizon Homes was successful in this Court on a petition for certiorari to the Court of Appeals. (See page 103.) In a pre-mandate motion Sunrizon now requests costs on appeal, including the cost of copying Petition and briefs.

 Costs were not recoverable at common law and we look to statutes and court rules to determine the scope of costs recoverable. *Owens v. Clark,* 177 Okl. 519, 61 P.2d 201, 203 (1936). Costs on appeal are authorized pursuant to 12 O.S.1981 § 978 when a judgment or final order is reversed. See also, *Chamberlin v. Chamberlin,* 720 P.2d 721, 725–727 (Okl.1986).

This court has stated on at least three occasions that recovery of the expense in printing briefs is not a statutorily sanctioned "cost". *National Educators Life Insurance Co. v. Apache Lanes, Inc.,* 555 P.2d 600, 602 (Okl.1976); *City of Moore v. Central Oklahoma Master Conservancy District,* 441 P.2d 452, 461 (Okl.1968); *Combs et al. v. Miller,* 105 P. 322 (Okl. 1909). A statutory exception to this general rule under 12 O.S.1981 § 1276 has been noted in divorce cases, *Durland v. Durland,* 552 P.2d 1148, 1149 (Okl.1976) and

*Dowdell v. Dowdell,* 463 P.2d 948, 953 (Okl. 1970). Sunrizon, however, has not cited any authority to support an award for the expense of copying briefs as costs in a case such as the one herein. We conclude that recovering the cost of producing copies of briefs or copies of petitions for certiorari is not permissible in this case.

Appellant's request for recovery of costs for copies of Brief in Chief, copies of Reply Brief, and copies of Petition is hereby denied. 12 O.S.1981, § 978.

Appellant's request to recover costs for an appeal fee required by 20 O.S.Supp.1986 § 15, certiorari fee required by 20 O.S. Supp.1986 § 30.4, and record fee required by 28 O.S.1981 § 155.1, is hereby granted. 12 O.S.1981, § 978.

HARGRAVE, C.J., OPALA, V.C.J., and HODGES, LAVENDER, SIMMS, ALMA WILSON and KAUGER, JJ., concur.